

11-CV-05629-CMP



UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MATTHEW G. SILVA,                          )
                                           )    No. C11-5629 RBL/KLS
            Plaintiff,                     )
                                           )
      v.                                   )
                                           )
ROB McKENNA, State A.G.;                   )
JOHN BLONIEN, ex-Assistant A.G.;           )
DOUGLAS CARR, Assistant A.G.;              )
KIMBERLY FRINELL, Assistant A.G.;          )
AMANDA MIGCHELBRINK, Assistant A.G.;       )
ELDON VAIL, ex-DOC Secretary;              )
DAN PACHOLKE, DOC Deputy Director;         )
STEVE SINCLAIR, WSP Supt.;                 )
CHRIS BOWMAN, WSP Assoc. Supt.;            )
CHUCK PEASE, WSP IMU Manager;              )
HEARINGS OFFICER JURGENSEN, WSP;           )
LINDA MICHAEL, WSP Lieutenant;             )    CIVIL RIGHTS COMPLAINT
DAVID C. ROBERTS, WSP Corr. Officer;       )    WITH JURY DEMAND
TAMARA ROWDEN, DOC Griev Prog Mgr;         )
RONALD FREDERICK, DOC Griev Prog Mgr;      )
DEVON SCHRUM, DOC Griev Prog Mgr;          )
LORI SCAMAHORN, WSP Griev. Coord.;         )
DENNIS DAHNE, ex-SCCC Griev. Coord.;       )
KERRI McTARSNEY, SCCC Griev. Coord.;       )
CORYDON WHALEY, SCCC Investigator;         )
CLINT MAY, SCCC Corr. Capt.;               )
CHERYL SULLIVAN, SCCC Mail Sgt.; and,      )
VANESSA COLEMAN, SCCC Hearings Off.,       )
                                           )
            Defendants.                    )
_____)

I. JURISDICTION, PARTIES and VENUE

      1.1 This court has jurisdiction over the federal constitutional claims

herein pursuant to 28 USC §§ 1331(1) and 1343.  This court has supplemental

jurisdiction over plaintiff's state law tort claims under 28 USC § 1367.  This

action is brought under 42 USC § 1983.

COMPLAINT - 1                                   — ORIGINAL —

1.2 The plaintiff, MATTHEW G. SILVA, is currently incarcerated at the Stafford Creek Corrections Center (SCCC), a Washington State Department of Corrections (DOC) facility located in Aberdeen, Washington.  When some of the events claimed of herein occurred, Mr. Silva was incarcerated at the Washington State Penitentiary (WSP) in Walla Walla, Washington.

1.3 Defendant ROB McKENNA is the Washington State Attorney General (A.G.) and, as such, he has both supervisory and policy-making authority over every employee of the Washington State Attorney General's Office (AGO).  Mr. McKenna is sued in his official and individual capacities.

1.4 Defendant JOHN BLONIEN was an Assistant A.G. (AAG) and the Supervisor of the Criminal Justice Division of the AGO when some of the events complained of herein occurred.  Later, he was a DOC Deputy Secretary when other material events transpired.  Mr. Blonien is sued in his individual capacity.

1.5 Defendant DOUGLAS CARR is an AAG and he is sued in his individual capacity.

1.6 Defendant KIMBERLY FRINELL is an AAG and she is sued in her individual capacity.

1.7 Defendant AMANDA MIGCHELBRINK is an AAG and she is sued in her individual capacity.

1.8 Defendant ELDON VAIL was the Secretary of the DOC when the events complained of herein occurred.  As such, he had both policy-making and supervisory authority over all DOC employees.  Mr. Vail is sued in his official and individual capacities.

1.9 Defendant DAN PACHOLKE was the Deputy Director of the DOC Prisons Division when some of the events complained of herein occurred, and he is the DOC Deputy Secretary now. When other material events transpired, Mr. Pacholke was the Superintendent of the SCCC. Mr. Pacholke is sued in his official and individual capacities.

1.10 Defendant STEVE SINCLAIR is the Superintendent of the WSP and he is sued in his individual capacity.

1.11 Defendant CHRIS BOWMAN is the Associate Superintendent at the WSP and he is sued in his individual capacity.

1.12 Defendant CHUCK PEASE is the Unit Manager of the Intensive Management Unit (IMU) at the WSP and he is sued in his individual capacity.

1.13 Defendant HEARINGS OFFICER JURGENSEN is a Hearings Lieutenant at the WSP and he is sued in his individual capacity.

1.14 Defendant LINDA MICHAEL is a WSP Lieutenant and she is sued in her individual capacity.

1.15 Defendant DAVID C. ROBERTS is a WSP Corrections Officer (C/O) and he is sued in his individual capacity.

1.16 Defendant TAMARA ROWDEN is the DOC Grievance Program Manager (GPM). As such, she has supervisory and policy-making authority over all grievance personnel at every DOC facility state-wide. Ms. Rowden is sued in her official and individual capacities.

1.17 Defendant RONALD FREDERICK was a GPM when some of the events complained of herein occurred. He is sued in his individual capacity.

1.18 Defendant DEVON SCHRUM was a GPM when some of the events complained of herein occurred. She is sued in her individual capacity.

1.19 Defendant LORI SCAMAHORN is a Grievance Coordinator (GC) at the WSP and she is sued in her individual capacity.

1.20 Defendant DENNIS DAHHE was a GC at the SCCC when some of the events complained of herein occurred. He is sued in his individual capacity.

1.21 Defendant KERRI McTARSNEY is a GC at the SCCC and she is sued in her individual capacity.

1.22 Defendant CORYDON WHALEY is the SCCC Chief Investigator and the Supervisor of the SCCC "Intelligence and Investigations Unit" (IIU). He is sued in his individual capacity.

1.23 Defendant CLINT MAY is an SCCC Corrections Captain and he is sued in his individual capacity.

1.24 Defendant CHERYL SULLIVAN is the Sergeant of the SCCC Mailroom and she is sued in her individual capacity.

1.25 Defendant VANESSA COLEMAN (a.k.a. VANESSA JOHANSEN) was a Hearings Lieutenant at the SCCC when some of the events complained of herein occurred. She is sued in her individual capacity.

1.26 Venue is proper in this court because the acts and omissions complained of herein occurred in Aberdeen, Olympia and Walla Walla, Washington, the facts occurring in the Western and Eastern Districts of Washington show a common custom, practice and pattern of unlawful behavior necessary to prove the conspiracy claims set forth herein, plaintiff is indigent and cannot afford to file separate actions in each district and it would be contrary to judicial economy concerns to bring the causes of action herein separately.

1.27 All defendants have acted under color of state law at all times material to this complaint.

COMPLAINT - 4

## II. OPERATIVE FACTS

### A. Illegal 2007 Segregation And Transfer

2.1 Defendants McKenna, Blonien, Carr, Frinell, Vail, Pacholke, Dahne, May and Coleman knew Mr. Silva was litigating civil actions against various SCCC employees, and that he was engaged in depositions and other discovery that would expose AGO and DOC misconduct. The misconduct that would be exposed if discovery continued included but was not limited to the said defendants' own illegal acts and omissions.

2.2 The defendants listed in paragraph 2.1, above, conspired together to transfer Mr. Silva from the SCCC to the WSP in retaliation for his litigation. One of the goals of the conspiracy was to obstruct discovery and litigation in the pending civil actions Mr. Silva was prosecuting at that time.

2.3 In the furtherance of the conspiracy described in paragraph 2.2, above, defendant Coleman held an unlawful "serious infraction hearing" against Mr. Silva on November 9, 2007. At the conclusion of that hearing, she found Mr. Silva "guilty" of "refusing to disperse". The civil rights and law violations underlying the "guilty" finding were asserted by Mr. Silva and unopposed by the defendants, in two (2) legal actions that were litigated to final judgment in Mr. Silva's favor. Attached and incorporated as Appendix 1 is a true copy of the DECLARATION OF MATTHEW SILVA (without exhibits), which is on file and unopposed in Silva v. DOC, Grays Harbor County Superior Court No. 07-2-01595-3 and In Re The PRP Of Matthew Silva, Washington State Court of Appeals No. 41071-1-II.

2.4 Defendant Coleman imposed 10 days of segregation and 20 days loss of good time as a sanction against Mr. Silva, and as a direct result of the invalid "guilty finding" she entered in that matter, Mr. Silva's custody level was "demoted" from medium to close custody.

2.5 As a direct and foreseeable result of defendant Coleman's unlawful sanction, Mr. Silva was immediately taken to the SCCC Segregation Unit and scheduled for transfer to a "close custody" facility.

2.6 Mr. Silva notified defendants McKenna, Blonien, Carr, Frinell, Vail, Pacholke, Whaley, May, Sullivan and Coleman that the November 9, 2007 disciplinary hearing was retaliatory and that it violated his due process rights. He also notified the said defendants that AGO and DOC employees planned to use the unlawful sanction as a pretext to transfer him across-the-state, to withhold his legal files and to obstruct pending litigation. Some of those correspondences are attached and incorporated as Appendix 2, which includes true copies of the 11/26/07 letter from Silva to McKenna, the 12/15/07 letter from Silva to McKenna, and the 12/27/07 letter from Blonien to Silva.

2.7 In spite of being on actual notice that Mr. Silva's constitutional rights were being violated, the defendants listed in paragraph 2.6, above, authorized SCCC staff to seize and withhold all of Mr. Silva's legal files from November 9th. From that date until about February, 2008, Mr. Silva never saw his legal files again, including the files related to his pending civil actions. This withholding was perpetrated in direct violation of DOC Policy and only ceased when Mr. Silva obtained an injunction directing the return of his files.

2.8 When Mr. Silva's legal files were seized and withheld on November 9, 2007, defendants Whaley and Carr personally went through all of the documents, stealing numerous papers that have never been returned or recorded as officially taken.

2.9 In order to cover up the illegal seizure, review and theft of documents described in paragraph 2.8, above, defendant Whaley later falsified a report to DOC Headquarters. In that report, he falsely claimed that IIU staff had not created or reviewed any records related to Mr. Silva during 2007. Defendants Whaley and Carr further falsified the SCCC Visitor Log by omitting AAG Carr's November, 2007 entry into the SCCC facility, which is when he rifled Mr. Silva's files with SCCC staff, as described above.

2.10 In _Silva v. DOC_ and _Silva v. Thompson, et al._, Grays Harbor County Superior Court No. 07-2-01595-3 and No. 07-2-00916-3, respectively, Mr. Silva presented a detailed challenge to the retaliation and due process violations associated with the Coleman hearing, as described above. During a November 20, 2007 hearing on his motion for a preliminary injunction to stop the transfer, defendants McKenna, Blonien, Carr and Frinell, along with those acting as their agents, fraudulently opposed the motions by alleging that Mr. Silva's civil rights had not been violated. Based on the said defendants' misrepresentations, the superior court declined to issue the requested injunction and Mr. Silva was transferred from the SCCC to the WSP on December 5, 2007.

2.11 In June, 2010, at the request of the AGO and DOC, the superior court transferred Cause No. 07-2-01595-3 to the court of appeals as a personal restraint petition (PRP). When the court of appeals ordered AGO and DOC to respond, the defendants conceded on all grounds and voluntarily vacated the "guilty" finding and sanction from the Coleman hearing.

2.12 As a result of the defendants' concession to Mr. Silva's PRP, judgment was entered in his favor and the court of appeals awarded him costs. No AGO or DOC employee appealed.

## B. Illegal 2009 Transfer And Segregation

2.13 In about August, 2009, Mr. Silva was housed at the Monroe Correctional Complex (MCC) in Monroe, Washington. At that time, he submitted a Public Records Act (PRA) request for retirement account information on various Washington State government officials. This request included but was not limited to information regarding defendants McKenna, Blonien, Carr, Frinell, Migchelbrink, Vail, Pacholke and Sinclair, along with many of their subordinates. Mr. Silva also sought and obtained records related to other assets owned by the said Washington State government officials.

2.14 The reason Mr. Silva sought information about the assets of state officials, as described above, was to pursue statutory liens for those officials' refusal to perform their mandatory duties under Washington State law. See RCW 4.28.328.

2.15 Defendants McKenna, Blonien, Carr, Migchelbrink, Vail, Pacholke and Sinclair, along with others unknown, knew about Mr. Silva's pursuit of statutory liens against their personal assets and official bonds. At no time after being placed on actual notice did any AGO or DOC employee assert, in a legal action or otherwise, that Mr. Silva's pursuit of the statutory liens was improper in any way. Rather, in order to obstruct the lien process unlawfully, the said defendants conspired together to transfer Mr. Silva from the MCC to the WSP, to withhold and copy his legal files, and to obstruct his ability to obtain injunctive relief from the superior court, where he was asking for orders to stop the said retaliation.

2.16 In the furtherance of the retaliation and obstruction conspiracy described in paragraph 2.15, above, the defendants actually had Mr. Silva transferred from the MCC to the WSP on October 15, 2009.

2.17 Defendants McKenna, Blonien, Carr, Migchelbrink, Vail, Pacholke, Sinclair and others unknown knew Mr. Silva had a telephonic court appearance scheduled in Silva v. WDOC, Thurston County Superior Court No. 09-2-00443-6, in which he was seeking the preliminary injunction described in paragraph 2.15, above.  The defendants also knew that Mr. Silva was seeking a similar preliminary injunction in Silva v. Ferrell, et al., Snohomish County Superior Court No. 09-2-10194-7.

2.18 The defendants listed in paragraph 2.15, above, furthered their conspiracy by orchestrating the issuance of an illegal injunction that enjoined the release of their retirement account information.  In the furtherance of that conspiracy, the defendants acted in concert to file and litigate Kenney, et al. v. Washington State Department of Retirement Systems, et al., Snohomish County Superior Court No. 09-2-09564-5, in which they obtained a temporary restraining order without any notice to Mr. Silva.

2.19 In the furtherance of the conspiracy described in paragraph 2.15, above, WSP staff refused to provide Mr. Silva with his legal files when he arrived at the WSP on October 15, 2009.  According to DOC Policy, when a prisoner is transferred with legal files that are needed for pending court deadlines, those files must be given to the transferee on the day of his arrival at the receiving facility.  When the defendant refused to provide Mr. Silva with his files from October 15th through 21st, they did so in direct violation of DOC Policy.

2.20 Because the defendants withheld Mr. Silva's legal files upon his arrival at the WSP, he missed a scheduled court hearing on a motion for preliminary injunction in the above-entitled No. 09-2-00443-5 matter.

2.21 After he missed the preliminary injunction hearing as described above, the superior court re-scheduled the hearing for early November, 2009.

2.22 On October 29, 2009, defendant Roberts falsified an infraction report against Mr. Silva.  Defendant Michaels then knowingly and intentionally used the obviously unsupported allegations as a pretext to segregate Mr. Silva in the WSP IMU.

2.23 When Mr. Silva was held in the WSP IMU, he was subjected to inhumane and unlawful conditions of confinement, including but not limited to no medical assessment, withholding of medication for serious medical needs, cold calls maintained between 50°-60° Fahrenheit, denial of reading materials for 4 days, denial of a Bible for 4 days, staff desecration of the Bible he did later receive, unsanitary food handling practices, denial of humane cell cleaning implements, systematic sleep deprivation, as well as the concerted, total denial of access to legal research materials and to his own legal files.

2.24  Mr. Silva filed a "Claim For Damages" with the Washington State Office of Financial Management (OFM) regarding the misconduct he was subjected to.  Attached and incorporated as Appendix 3 is a true copy of the said Claim.

2.25 OFM refused to investigate Mr. Silva's allegations and fraudulently responded that DOC "administrative procedures" do not fall under "Tort law". Attached and incorporated as Appendix 4 is a true copy of the 2/16/10 letter from Hopkins to Silva.

2.26 As a result of the illegal segregation and conditions imposed upon Mr. Silva, he suffered actual injuries as described in the Claim For Damages (App 1), including but not limited to the delay of the hearing and denial of his preliminary injunction motion in Thurston County, and imposition of the unnoticed, void injunction in the Kenney case.

2.27 The conditions in the WSP IMU amounted to an atypical and significant hardship in comparison with the conditions in the WSP General Population, and in comparison with the ordinary incidents of WSP prison life. In WSP General Population, inmates are given medical assessments with a day or two, medication for serious medical needs is readily available, cells are maintained between 68°-72° Fahrenheit, reading materials and Bibles are available at any time, food handling practices are sanitary, humane cell cleaning implements are available daily, sleep deprivation tactics are not employed and legal research materials are directly available.

C. DOC Grievance Censorship

2.28 DOC maintains a practice of arbitrarily and capriciously prohibiting prisoners from citing case law or RCW's in their official grievances. DOC Policy does not expressly prohibit such citations, however. Only the use of "legal language" and "excessive legal citations" is proscribed. At the same time, prisoners are allowed to cite DOC Policy and Washington Administrative Code (WAC) in their grievances. There is no rational basis to distinguish between WAC and case law or RCW citations in an official grievance.

2.29 Citing a few applicable case law or RCW's does not amount to "legal langugage" or "excessive legal citations".

2.30 When facility grievance coordinators and other DOC administrators investigate and respond to prisoner grievances, they are required by DOC Policy to investigate and cite controlling RCW's, even though the prisoner-grievants are not allowed to cite RCW's in their administrative complaints. This practice has been "reviewed and approved" by defendant McKenna and his subordinates.

2.31 From August, 2008 to date, defendants McKenna, Blonien, Carr, Frinell, Migchelbrink, Vail, Pacholke, Sinclair, Bowman, Rowden, Frederick, Schrum, Scamahorn, Dahne, McTarsney and May knowingly and intentionally censored all of Mr. Silva's official grievances by demanding that he remove all case law, RCW and constitutional citations from his administrative complaints.  If Mr. Silva refused to remove these citations from his grievances, the defendants agreed together to refuse to allow him access to the grievance process.  During the said time period, at least 50 grievances were rejected for their content, which Mr. Silva refused to change.

2.32 When Mr. Silva demanded that the defendants specify the reasons underlying their censorship practice, they never claimed     any "legitimate penological interest" as a basis.  Attached and incorporated as Appendix 5 is a true copy of Grievance No. 1106221.

2.33 On numerous instances and without any legitimate reason, the defendants listed in paragraph 2.31, above, agreed to process other prisoners' grievances that contained case law and RCW citations.  There was no rational relationship to any legitimate governmental purpose, nor any penological interest, in treating these other prisoners differently than Mr. Silva with regard to grievance content.

### D. Illegal Withholding Of U.S. Mail

2.34 On September 29, 2010, defendant Sullivan illegally restricted two (2) pieces of incoming "special mail" that was addressed to Mr. Silva from the AGO.  Each piece of said mail included documents Mr. Silva had requested and paid for from the AGO, under Washington State's Public Records Act (PRA).  See RCW 42.56 et seq.

2.35 When defendant Sullivan illegally restricted Mr. Silva's "special mail" as described in paragraph 2.34, above, she opened both pieces outside of his presence and contrary to DOC Policy 450.100(V)(A)(1).

2.36 Mr. Silva timely submitted appeals of defendant Sullivan's illegal mail restrictions to defendant May, who is her direct supervisor.

2.37 On November 8, 2010, defendant May issued a perfunctory denial of Mr. Silva's appeals without addressing the illegality of opening his "special mail" outside his presence, or the complete lack of any "legitimate penological interest" supporting the restrictions.  Attached and incorporated as Appendix 6 is a true copy of the 11/8/10 letter from May to Silva.

2.38 Mr. Silva timely appealed defendant May's decision (App 6) to defendant Pacholke, who was responsible for deciding final mail rejection appeals at that time.  Mr. Silva mailed his final appeal via certified mail. Attached and incorporated as Appendix 7 is a true copy of the 11/18/10 letter from Silva to DOC.

2.39 No DOC employee ever responded to Mr. Silva's final appeal (App 7), thereby conceding that no legitimate penological interest supported the restriction of either piece of his mail.

2.40 The real reason Mr. Silva's two piece of mail were restricted by defendants Pacholke, May and Sullivan was because the contents of the envelopes contained evidence that exposed serious misconduct by AGO, DOC and SCCC employees, including but not limited to defendants McKenna, Blonien, Carr, Vail, Pacholke, Frederick, Schrum, Dahne, McTarsney, Whaley, May and Sullivan.

III. <u>CAUSES OF ACTION</u>

## Count One - Retaliation

3.1 When the defendants listed in paragraph 2.1, above, conspired together to retaliate against Mr. Silva by infracting, segregating, sanctioning, demoting and transferring him, and by seizing, withholding and stealing his legal files to obstruct pending litigation, they acted without or in excess of any "legitimate penological interest". The said defendants' acts and omissions violated Mr. Silva's right to freedom from arbitrary and capricious retaliation for his litigation activities, which are protected under the First Amendment. Mr. Silva hereby seeks special findings and damages, including but not limited to punitive damages, for the defendants' violation of his First Amendment rights as set forth in Count One.

## Count Two - Due Process

3.2 When the defendants listed in paragraphs 2.1, above, sanctioned Mr. Silva to loss of good time based on the unlawful November 20, 2007 Coleman hearing, they intentionally violated his right to minimum due process under <u>Wolff v. McDonnell</u>, 418 U.S. 539 (1974). Mr. Silva hereby seeks special findings and damages, including but not limited to punitive damages, for the defendants' violation of his Fourteenth Amendment rights as set forth in Count Two.

## Count Three - Racketeering

3.3 The AGO and the DOC are enterprises that affect interstate commerce. When the defendants posted the fraudulent "guilty" finding and transmitted it over the internet, and when they fraudulently told the superior court that the November 9, 2007 hearing had not violated Mr. Silva's civil rights during a telephonic hearing, they committed two (2) separate acts of wire fraud under 18 USC § 1341. Further, when the defendants sent the fraudulent letter from

Blonien to Silva via U.S. Mail (App 2), they committed one (1) act of mail fraud under 18 USC § 1343.  These acts of wire and mail fraud amount to a pattern of racketeering activity under 18 USC §§ 1961(1) and 1964(c).  As a proximate result of the defendants' pattern of racketeering activity, as described herein, Mr. Silva was injured in his property where his legal files were seized, stolen and withheld from November, 2007 through February, 2008. Accordingly, Mr. Silva hereby seeks special findings and damages, including but not limited to treble damages, for the defendants' racketeering.

<u>Count Four - Retaliation</u>

3.4 When the defendants listed in paragraph 2.15, above, conspired together to retaliate against Mr. Silva by transferring and segregating him while withholding his legal files, they acted without or in excess of any "legitimate penological interest".  The said defendants' acts and omissions violated Mr. Silva's right to freedom from arbitrary and capricious retaliation for his litigation activities, which are protected under the First Amendment to the United States Constitution.  Mr. Silva hereby seeks special findings and damages, including but not limited to punitive damages, for the defendants' violation of his First Amendment rights as set forth in Count Four.

<u>Count Five - Due Process</u>

3.5 When the defendants listed in paragraphs 2.15, 2.17, 2.22 and 2.24, above, transferred Mr. Silva to the WSP IMU without any evidence that he had violated any rule, and when they held him there without any hearing for 16 days, in conditions that amounted to an atypical and significant hardship in comparison to those in WSP General Population and the ordinary incidents of prison life, they intentionally violated his right to minimum due process

under Wolff v. McDonnell, 418 U.S. 539 (1974).  Mr. Silva hereby seeks special

findings and damages, including but not limited to punitive damages, for the

defendants' violation of his Fourteenth Amendment rights as set forth in Count

Five.

### Count Six - Cruel And Unusual Punishment

3.6 When the defendants held Mr. Silva in the WSP IMU, in conditions

that were below the minimal civilized measure of life's necessities, they did

so recklessly with deliberate indifference.  Mr. Silva hereby seeks special

findings and damages, including but not limited to punitive damages, for the

violation of his Eighth Amendment rights as set forth in Count Six.

### Count Seven - Tort Claims

3.7 When the defendants listed in paragraph 2.24, above, misrepresented

the facts, physically seized Mr. Silva and placed him in handcuffs for over an

hour without authority, held him in conditions that violated DOC Policy,

kept him segregated for 16 days and committed all of the acts alleged in Mr.

Silva's Claim For Damages (App 3), they committed state law torts of

negligence, fraud, false imprisonment and outrage.  Mr. Silva hereby seeks

special findings and damages for each of the defendants' tortious acts and

omissions as set forth in Count Seven.

### Count Eight - RLUIPA

3.8 When the defendants withheld a Bible from Mr. Silva for 4 days, and

when they threw a Bible onto the floor of his cell, as described in paragraph

2.24 (App 3, Exhibit 8 at page 2), they violated his right to exercise his

religion (daily Bible reading) without any compelling governmental interest

and in excess of the least restrictive means, contrary to 42 USC § 2000cc, and

without any legitimate penological interest, contrary to the First Amendment.

Mr. Silva hereby seeks special findings, a declaration or injunction, and

damages, including but not limited to punitive damages, for the violation of his RLUIPA and First Amendment rights  as set forth in Count Eight.

### Count Nine - Grievance Censorship

3.9 When the defendants listed in paragraph 2.31, above, censored Mr. Silva's official grievances by ordering him to omit citations to case law, RCW and the constitution, they violated his right to free speech and access to the courts under Bradley v. Hall, 64 F.3d 1276 (9th 1995).  Mr. Silva hereby seeks special findings and damages, including but not limited to punitive damages, for the violation of his First Amendment rights as set forth in Count Nine.

### Count Ten - Equal Protection

3.10 When the defendants listed in paragraphs 2.31 and 2.33, above, censored Mr. Silva's official grievances because they contained case law, RCW or constitutional citations, and when they treated similarly situated prisoners differently by allowing them to use those same citations in their officials grievances, they violated his right to equal protection of the laws. Mr. Silva hereby seeks special findings and damages, including but not limited to punitive damages, for the defendants' violation of his Fourteenth Amendment rights as set forth in Count Ten.

### Count Eleven - Mail Restriction

3.11 When defendants Sullivan, May and Pacholke illegally restricted Mr. Silva's U.S. Mail without any legitimate penological interest, and when they conceded that no such interest exists by failing to respond to Mr. Silva's final appeal, they violated his right to mail without unnecessary interference.  Mr. Silva hereby seeks special findings and damages, including but not limited to punitive damages, for the violation of his First Amendment rights as set forth in Count Eleven.

## IV. REQUEST FOR RELIEF

4.1 Enter a judgment in Mr. Silva's favor against the defendants, and each of them jointly and/or severally, for money damages in an amount to be determined at trial.

4.2 Enter a declaratory judgment that the acts and omissions of the defendants are unconstitutional and unlawful.

4.3 Enter an injunction prohibiting the defendants from violating the constitution and/or laws as described herein.

4.4 Grant Mr. Silva his costs, fees, attorneys' fees, statutory attorney's fees and any other relief to which he may be entitled.

## V. VERIFICATION

The undersigned declares under penalty of perjury that the foregoing is true and correct.

RESPECTFULLY submitted this 11th day of August, 2011.

MATTHEW SILVA, plaintiff
WDOC 957176
Stafford Creek Corr. Center
191 Constantine Way
Aberdeen, WA 98520

# Appendix 1

RECEIVED

JAN 1 4 2008

ATTORNEY GENERALS OFFICE
CRIMINAL JUSTICE DIV/OLYMPIA

SUPERIOR COURT OF WASHINGTON
FOR GRAYS HARBOR COUNTY

| | |
|---|---|
| MATTHEW G. SILVA, PETITIONER, | NO. 07-2-01595-3 |
| V. | DECLARATION OF |
| WASHINGTON STATE DEPT. OF CORRECTIONS (WDOC), RESPONDENT. | MATTHEW SILVA |

| | |
|---|---|
| STATE OF WASHINGTON | |
| | SS. |
| COUNTY OF GRAYS HARBOR | |

I, MATTHEW G. SILVA, DECLARE UNDER PENALTY OF PERJURY THAT THE FOLLOWING STATEMENT IS TRUE AND CORRECT:

1. I AM THE PETITIONER HEREIN AND I AM COMPETENT TO TESTIFY. I MAKE THIS STATEMENT FROM FIRST HAND KNOWLEDGE.

DECLARATION - 1

20

- ORIGINAL -

2.  I AM A PRISONER CONFINED AT THE STAFFORD CREEK CORRECTIONS CENTER (SCCC) IN ABERDEEN, WASHINGTON.  THE SCCC IS A WASHINGTON STATE DEPARTMENT OF CORRECTIONS (WDOC) FACILITY.

3.  ON OCTOBER 31, 2007, I WAS SINGLED OUT FROM ABOUT 10 OR 15 INMATES WHO WERE GETTING JUICE AT A JUICE MACHINE IN THE SCCC CHOW HALL.  A CORRECTIONS OFFICER (C/O) FIRST ORDERED ME TO SIT DOWN, THEN DIRECTED ME TO LEAVE THE CHOW HALL FOR NO APPARENT REASON.

4. BASED ON THE C/O'S ORDER, I LEFT THE AREA AND PLACED MY TRAY ON THE COUNTER AREA CLOSEST TO ME, AS I WAS LEAVING, I ASKED FOR THE C/O'S NAME AND THE NAME OF THE NEAREST SUPERVISOR.  IMMEDIATELY, THE C/O USED HIS RADIO TO CALL FOR ASSISTANCE, FALSELY ALLEGING THAT I WAS "REFUSING TO DISPERSE".

DECLARATION - 2

21

5.  I WAS ESCORTED OUT OF THE
CHOW HALL BY SCCC SERGEANT (SGT.)
JAMES BURNS AND C/O PRESSWOOD. DURING
THE ESCORT, I WAS KEPT IN RESTRAINTS
(i.e. HANDCUFFS).

6.  AT NO TIME DURING THE ABOVE
INCIDENT OR ESCORT DID I SAY "NO",
NOR DID I REFUSE OR FAIL TO COMPLY
WITH ANY STAFF ORDER TO DISPERSE. I
WAS IN THE ACT OF COMPLYING WITH THE
ORDER WHEN THE C/O ALLEGED THAT
I WAS "REFUSING TO DISPERSE" OVER HIS
RADIO.

7.  THE ENTIRE INCIDENT WAS
RECORDED ON THE SCCC DIGITAL VIDEO
SURVEILLANCE SYSTEM BECAUSE IT
OCCURRED DIRECTLY IN FRONT OF
THE CHOW HALL CAMERA.

8.  AS I WAS UNDER ESCORT, I
EXPLAINED TO SGT. BURNS THAT HIS
C/O WAS FALSELY ALLEGING THAT I
"REFUSED TO DISPERSE".

DECLARATION - 3                              22

9. WHEN A PRISONER ACTUALLY
REFUSES AN ORDER TO DISPERSE, STANDARD
SCCC PRACTICE IS FOR THAT PRISONER TO
BE TAKEN TO THE SEGREGATION UNIT AND
HELD ON "PRE-HEARING CONFINEMENT". IN
FACT, BECAUSE RECALCITRANT BEHAVIOR
LIKE "REFUSING AN ORDER TO DISPERSE" IS
BEHAVIOR THAT THREATENS THE ORDERLY
OPERATION OF THE FACILITY, AND BECAUSE
THIS INCIDENT OCCURRED IN FRONT OF
A LARGE GROUP OF PRISONERS IN THE
SCCC CHOW HALL, WDOC POLICY WOULD
HAVE REQUIRED THAT I BE PLACED IN
PRE-HEARING SEGREGATION. I AM
HEREBY ASKING THE COURT TO TAKE
JUDICIAL NOTICE OF WDOC POLICY 460.000,
WHICH I DO NOT HAVE ACCESS TO AT
THIS TIME.

10. SGT. BURNS WITNESSED THE
ENTIRE INCIDENT. WHEN WE GOT OUTSIDE
THE CHOW HALL DURING THE ESCORT, HE
ADMITTED THAT HIS C/O HAD BEEN "OUT
OF LINE" BUT SAID HE COULD NOT
ADDRESS THE SITUATION WHEN IT OCCURRED.

DECLARATION - 4

23

11.  ACCORDINGLY, ONCE WE WERE OUTSIDE THE CHOW HALL, SGT. BURNS ORDERED C/O PRESSWOOD TO REMOVE THE HANDCUFFS AND GET ME A SACK-LUNCH FROM THE KITCHEN. I WAS THEN ALLOWED TO LEAVE.

12.  ON NOVEMBER 5, 2007, I WAS SERVED WITH AN "INITIAL SERIOUS INFRACTION REPORT" AND TWO "INCIDENT REPORT(S)" REGARDING THE CHOW HALL INCIDENT. ATTACHED AND INCORPORATED AS EXHIBIT 1 IS A TRUE COPY OF THE INFRACTION REPORT, ALONG WITH THE INCIDENT REPORTS.

13.  WHEN I WAS SERVED, I REQUESTED IN-PERSON DEFENSE WITNESS TESTIMONY, IN WRITING ON THE NOTICE FORM. ATTACHED AND INCORPORATED AS EXHIBIT 2 IS A TRUE COPY OF THE SAID "DISCIPLINARY HEARING NOTICE/APPEARANCE WAIVER" FORM, WITH MY WRITTEN REQUEST.

DECLARATION - 5                                    24

14. IN ORDER TO OBTAIN EVIDENCE NECESSARY TO DEFEND MYSELF AGAINST THE ABOVE INFRACTION, I SUBMITTED A PUBLIC RECORDS REQUEST TO SHERI IZATT, SCCC PUBLIC RECORDS OFFICER. ATTACHED AND INCORPORATED AS EXHIBIT 3 IS A TRUE COPY OF THE SAID 11/6/07 LETTER FROM SILVA TO DOJ/SCCC RECORDS.

15. I SUBMITTED THE RECORDS REQUEST DIRECTLY TO MS. IZATT THROUGH THE INTER-DEPARTMENTAL MAIL SYSTEM. SUCH ITEMS ARE DELIVERED EACH BUSINESS DAY DIRECTLY TO ADDRESSEES WITHIN THE INSTITUTION.

16. ON NOVEMBER 20, 2007, I RECEIVED A RESPONSE FROM MS. IZATT. SHE CLAIMED NOT TO HAVE RECEIVED MY 11/6/07 REQUEST (EX 3) UNTIL NOVEMBER 13th. CONTRARY TO PUBLISHED WDOC POLICY, MS. IZATT DID NOT RESPOND TO THE RECORDS REQUEST BUT "FORWARDED" IT. ATTACHED AND INCORPORATED AS EXHIBIT 4 IS A TRUE COPY OF MS. IZATT'S 11/19/07 RESPONSE.

DECLARATION - 6

17. ON NOVEMBER 9, 2007, I APPEARED AT THE ADMINISTRATIVE HEARING ON THE ABOVE INFRACTION. THE HEARING OFFICER WAS A WOMAN NAMED V. JOHANSEN.

18. ALTHOUGH I PREVIOUSLY FORWARDED A COPY OF MY RECORDS REQUEST (EX 3) TO THE HEARINGS OFFICE, MS. JOHANSEN CLAIMED NEVER TO HAVE SEEN IT. ACCORDINGLY, I SHOWED MS. JOHANSEN A COPY AND SUBMITTED ONE FOR THE ADMINISTRATIVE RECORD, ASKING FOR A CONTINUANCE IN ORDER TO OBTAIN EVIDENCE FOR MY DEFENSE.

19. MS. JOHANSEN DENIED MY CONTINUANCE REQUEST WITHOUT ANY FINDING THAT IT WAS UNREASONABLE, AND WITHOUT STATING ANY BASIS FOR HER DECISION.

DECLARATION - 7

20. IN SEPTEMBER, 2007, I HAD VARIOUS SCCC OFFICIALS SERVED WITH A CIVIL ACTION WHICH CHALLENGED THE PROCEDURE STAFF WERE USING TO ADJUDICATE GENERAL INFRACTIONS. ATTACHED AND INCORPORATED AS EXHIBIT 5 IS A TRUE COPY OF THE SILVA v. THAUT, et al, COMPLAINT.

21. I HAD ALL OF THE DEFENDANTS IN THE THAUT CASE SERVED EXCEPT SGT. DICKERSON, UNKNOWN APPELLATE OFFICER AND DENNIS THAUT.

22. ON OCTOBER 9, 2007, I MAILED THE THAUT COMPLAINT AND SUPPORTING DOCUMENTS TO THE COURT. ATTACHED AND INCORPORATED AS EXHIBIT 6 IS A TRUE COPY OF THE 10/8/07 COVER LETTER, ALONG WITH THE WDOC POSTAGE TRANSFER PROVING MAILING.

DECLARATION — 8

27

23.  IN MID OCTOBER, 2007, ASSISTANT
ATTORNEY GENERAL DOUGLAS CARR APPEARED
ON BEHALF OF ALL DEFENDANTS IN THE THAUT
CASE. AAG CARR CALLED AND ASKED ME
FOR AN EXTENSION TO ANSWER THE
COMPLAINT.  I AGREED TO ALLOW
DEFENDANTS UNTIL NOVEMBER 7, 2007
TO SERVE THEIR ANSWER, AND AAG CARR
AGREED TO WAIVE FORMAL SERVICE ON
BEHALF OF THE REMAINING DEFENDANTS.

24.  ON ABOUT OCTOBER 25, 2007,
I SERVED AAG CARR WITH DEPOSITION
NOTICES FOR ALL DEFENDANTS IN THE
THAUT CASE, EXCEPT FOR "UNKNOWN
APPELLATE OFFICER".  I ALSO ASKED
AAG CARR TO IDENTIFY DEFENDANT "UNKNOWN
APPELLATE OFFICER" SO I COULD DEPOSE
AND ADDRESS DISCOVERY TO THAT PERSON
AS WELL. DEPOSITIONS WERE NOTED
WITH THE SAID DEFENDANTS FROM
ABOUT NOVEMBER 9th – 20th, ONE FOR
EACH BUSINESS DAY.

DECLARATION - 9                                    28

25. ON NOVEMBER 6, 2007, I RECEIVED A LETTER FROM AAG CARR. HE NOTIFIED ME THAT THE THAUT CASE HAD NOT BEEN FILED WITH THE SUPERIOR COURT AND DEMANDED THAT I FILE IT. ATTACHED AND INCORPORATED AS EXHIBIT 7 IS A TRUE COPY OF THE 11/5/07 LETTER FROM CARR TO SILVA, WITH ENCLOSURE AS INDICATED.

26. CONTRARY TO RCW 7.21, NONE OF THE THAUT DEFENDANTS APPEARED FOR THEIR DEPOSITIONS.

27. AAG CARR DID NOT IDENTIFY DEFENDANT "UNKNOWN APPELLATE OFFICER".

28. ON NOVEMBER 7, 2007, I MAILED A LETTER TO VARIOUS LOCAL, STATE AND FEDERAL OFFICIALS SEEKING AN INVESTIGATION INTO THE MISSING THAUT PAPERWORK. ATTACHED AND INCORPORATED AS EXHIBIT 8 IS A TRUE COPY OF THE 11/7/07 LETTER FROM SILVA TO JUDGE MC CAULEY et al (W/O ENCS).

DECLARATION - 10

29

29. THE LETTER (EX 8) WAS DELIVERED TO SCCC SUPERINTENDENT PACHOLKE VIA INTER-DEPARTMENTAL MAIL, SO HE SHOULD HAVE RECEIVED IT IN HIS OFFICE BY NOVEMBER 9th.

30. CONTRARY TO WDOC POLICY 450.100 AND FEDERAL LAW, SCCC MAILROOM OFFICIALS REFUSED TO MAIL THE INVESTIGATION REQUEST (EX 8) TO THE UNITED STATES POSTAL INSPECTOR. ATTACHED AND INCORPORATED AS EXHIBIT 9 IS A TRUE COPY OF THE 11/9/07 "MAIL REJECTION" RELATING TO THE SAID OBSTRUCTION OF U.S. MAIL.

31. MOREOVER, THE SCCC "INTELLIGENCE AND INVESTIGATION UNIT" (IIU) ILLEGALLY REFUSED TO INVESTIGATE THE "POSSIBLE ALLEGED OBSTRUCTION OF (MY) LEGAL FILINGS", CLAIMING THAT SUCH OBSTRUCTION WOULD NOT AMOUNT TO "CRIMINAL CONDUCT". ATTACHED AND INCORPORATED AS EXHIBIT 10 IS A TRUE COPY OF THE 11/16/07 MEMO FROM IIU.

DECLARATION - 11

30

32. DURING THE NOVEMBER 9th ADMINISTRATIVE HEARING, I INFORMED MS. JOHANSEN THAT SCCC STAFF APPEAR TO HAVE BEEN INVOLVED IN CRIMINAL MISCONDUCT AIMED AT OBSTRUCTING THE THAUT CASE. I SUBMITTED A TRUE AND COMPLETE COPY OF THE 11/7/07 INVESTIGATION REQUEST LETTER (EX 8), WHICH INCLUDED ALL ATTACHMENTS INDICATED.

33. I ALSO PROVIDED MS. JOHANSEN WITH AN ORIGINAL "DECLARATION OF GREGORY THOMAS", IN WHICH MR. THOMAS CLAIMS TO HAVE HEARD THE INFRACTING OFFICER TELL ANOTHER C/O THAT HE WAS JUST TRYING TO "TAKE (SILVA) TO THE HOLE". ATTACHED AND INCORPORATED AS EXHIBIT 11 IS AN ORIGINAL 11/9/07 "DECLARATION OF GREGORY THOMAS", WHICH IS DESCRIBED ABOVE.

DECLARATION - 12

31

34.  I TRIED TO ADVANCE A DEFENSE
THEORY THAT EVIDENCE SHOWED THAT
PRISON OFFICIALS WERE TRYING TO COVER
UP THEIR OWN CRIMINAL MISCONDUCT BY
FALSIFYING THE INFRACTION AND THEREBY
EFFECTING MY TRANSFER TO ANOTHER
PRISON. MS. JOHANSEN FLATLY REFUSED
TO LET ME TALK ABOUT ANY COVER-UP
ON THE RECORD, THREATENING TO HAVE
ME REMOVED FROM THE HEARING IF I
PERSISTED IN ASSERTING THAT DEFENSE.

35.  MS. JOHANSEN ALSO DENIED
MY WRITTEN REQUEST FOR IN-PERSON
TESTIMONY WITHOUT ARTICULATING ANY
REASON IN SUPPORT OF HER DECISION.
SHE ALSO FAILED TO DOCUMENT ANY
FINDINGS IN THE WRITTEN RECORD
REGARDING THE DENIAL OF IN-PERSON
TESTIMONY.

DECLARATION - 13

32

36. MS. JOHANSEN FOUND ME
"GUILTY" WITHOUT CONSIDERING ANY OF
MY EVIDENCE. ATTACHED AND INCORPORATED
AS EXHIBIT 12 IS A TRUE COPY OF THE
"DISCIPLINARY HEARING MINUTES AND FINDINGS,"
WHICH INCLUDES MS. JOHANSEN'S SUMMARY
OF TESTIMONY, EVIDENCE, FINDINGS, REASONS
AND ANY RELEVANT INFORMATION.

37. WHEN I LATER LOOKED AT
MS. JOHANSEN'S SIGNATURE ON THE
FINDINGS (EX 12), I REALIZED THAT
SHE IS THE "UNKNOWN APPELLATE
OFFICER" DESCRIBED AT PAGES 2
AND 8-9 OF THE THAUT COMPLAINT.
(EX. 5).

38. THE ENTIRE HEARING WAS
ATTENDED BY C/O COOL, THE HEARINGS
ESCORT OFFICER. HE HAD NOT ATTENDED
ANY OF THE OTHER INMATE'S HEARINGS
THAT DAY. WHEN MS. JOHANSEN FOUND
ME GUILTY, C/O COOL IMMEDIATELY
PLACED ME IN HANDCUFFS AND ESCORTED
ME TO THE SEGREGATION UNIT.

DECLARATION - 14

33

39. CONTRARY TO WDOC POLICY 460.000, MS. JOHANSEN HAS REFUSED TO RESPOND TO MY REQUESTS FOR COPIES OF THE DOCUMENTARY EVIDENCE AND TAPE RECORDING OF THE NOVEMBER 9th HEARING. ATTACHED AND INCORPORATED AS EXHIBIT 13 ARE TRUE COPIES OF MY 11/9/07 AND 11/20/07 KITES, WHICH WERE SUBMITTED TO MS. JOHANSEN AS DATED.

40. PRISONERS WHO ARE GOING TO BE HELD IN THE SCCC SEGREGATION UNIT FOR MORE THAN 10 DAYS ARE ENTITLED TO THEIR OWN LEGAL FILES UP TO ONE BOX (10"x12"x18"). ATTACHED AND INCORPORATED AS EXHIBIT 14 ARE TRUE EXCERPTS FROM THE SCCC SEGREGATION UNIT HANDBOOK, PAGES 1, 10-13, WHICH SETS FORTH NORMAL LEGAL ACCESS REQUIREMENTS.

41. I FILED AN EMERGENCY GRIEVANCE AFTER BEING DENIED ACCESS TO MY OWN FILES. ATTACHED AND INCORPORATED AS EXHIBIT 15 IS A TRUE COPY OF MY 11/21/07 EMERGENCY GRIEVANCE WITH STAFF RESPONSE.

DECLARATION - 15

34

42. LATER, AFTER I FILED THE EMERGENCY GRIEVANCE, I RECEIVED A FORM INDICATING THAT SCCC OFFICIALS HAVE ILLEGALLY SEIZED ALL OF MY LEGAL WORK "FOR INVESTIGATION". ATTACHED AND INCORPORATED AS EXHIBIT 16 IS A TRUE COPY OF THE 11/10/07 "SEARCH REPORT/ EVIDENCE FORM", WHICH I MARKED AND DATED WHEN I RECEIVED IT. SIGNIFICANTLY, THE SEIZURE DOCUMENTATION IS FACIALLY INVALID.

43. AFTER MY NOVEMBER 9th HEARING, SCCC OFFICIALS HAVE HELD ILLEGAL "HEARINGS" IN WHICH THEY SUMMARILY DETERMINED THAT I WOULD BE TRANSFERRED TO A HIGH-SECURITY PRISON BASED ON THE "REFUSING TO DISPERSE" INFRACTION. I WAS DENIED NOTICE, MY RIGHT TO PRESENT WITNESS STATEMENTS AND AN IMPARTIAL TRIBUNAL AT THESE "HEARINGS", CONTRARY TO WASHINGTON ADMINISTRATIVE CODE (WAC) 137-32-002(10), 137-32-010, 137-32-015.

DECLARATION - 16

35

SIGNED THIS 26th DAY OF NOVEMBER, 2007, AT ABERDEEN, WASHINGTON.

_____

MATTHEW G. SILVA, DECLARANT
STAFFORD CREEK CORRECTIONS CENTER
191 CONSTANTINE WAY
ABERDEEN, WA 98520

## PROOF OF SERVICE

THE UNDERSIGNED DECLARES UNDER PENALTY OF PERJURY THAT A TRUE COPY OF THIS DECLARATION WAS MAILED, POSTAGE PREPAID AS "LEGAL MAIL", TO PETER BERNEY, AAG, P.O. BOX 40116, OLYMPIA, WA 98504 (RE: 07-2-00916-3 GRAYS HARBOR CAUSE) AND TO HEIDI HOLLAND, AAG, W. 1116 RIVERSIDE, SPOKANE, WA 99201 (RE: 60439-2-I DIVISION ONE CAUSE), THIS 26th DAY OF NOVEMBER, 2007.

_____

MATTHEW SILVA, DECLARANT

DECLARATION - 17

36

# Appendix 2

MATTHEW SILVA   957176
STAFFORD CREEK CORRECTIONS CENTER
191 CONSTANTINE WAY
ABERDEEN, WA 98520

NOVEMBER 26, 2007

ROB MCKENNA
ATTORNEY GENERAL OF WASHINGTON
P.O. BOX 40100
OLYMPIA, WA 98504

DEAR MR. MCKENNA:

BY THIS LETTER, I AM NOTIFYING YOU THAT PETER
BERNEY APPEARED AT A TELECONFERENCE HEARING ON
11/20/07 IN SILVA v. THOMPSON, et al, 07-2-00916-7,
GRAYS HARBOR SUPERIOR, AND FRAUDULENTLY ALLEGED
THAT THE 11/9/07 HEARING HELD AT THE ABOVE
INSTITUTION WAS LAWFUL. FURTHER, YOUR OFFICE
IS ON ABUNDANT NOTICE THAT WASHINGTON STATE
DEPARTMENT OF CORRECTIONS (WDOC) OFFICIALS
ARE BREAKING THE LAW, YET YOU PERSIST IN
REPRESENTING THE LAW BREAKERS TO THE
DETRIMENT OF THE RIGHTS OF THE PEOPLE OF THE
STATE OF WASHINGTON. SEE STATE EX REL

6

MCKENNA LETTER
NOVEMBER 26, 2007
PAGE 2 OF 2

DUNBAR v. STATE BOARD OF EQUALIZATION, 140 WN. 433
(1926); REITER v. WALLGREN, 28 WN. 2d 872, 880
(1947); ERIKS v. DENVER, 118 WN. 2d 451, 457-58
(1992); SANDERS v. WOODS, 121 WN. 2d 593, 597 (2004).

THE UNDISPUTED RECORDS IN THOMPSON, SUPRA;
IN RE PRP OF SILVA, 60439-2-I, DIV. I; SILVA
v. MILLER-STOUT, et al, 07-2-04544-3, SPOKANE
SUPERIOR, SHOW THAT STATE OFFICIALS ARE
BREAKING THE LAW WHILE YOUR OFFICE CONTINUES
TO SUPPORT AND INDEMNIFY THEM. MOST RECENTLY,
YOUR OFFICE IS ADVOCATING FOR A WDOC ILLEGAL
TRANSFER OF MYSELF TO A HIGH-SECURITY PRISON.
BY LAW, THIS WILL AMOUNT TO A KIDNAPPING.

YOU HAVE A SWORN DUTY TO OBSTRUCT LAW
VIOLATIONS BY STATE OFFICIALS. DUNBAR, SUPRA.
FAILURE OF DUTY IS CRIMINAL. RCW 42.20.100.
PLEASE TAKE APPROPRIATE MEASURES BY LOOKING
INTO THESE ALLEGATIONS
SINCERELY,

MATTHEW SILVA
C FILE

7                                              39

Matthew G. Silva
WDOC 957176
Washington State Penitentiary
1313 N 13th Ave
Walla Walla, WA 99362

December 15, 2007

Rob McKenna, Attorney General
Attorney General of Washington
P.O. Box 40100
Olympia, WA 98504

Re: <u>Silva v. Miller-Stout, et al</u>, 07-2-04544-3
    Spokane County Superior Court

    <u>Silva v. Thompson, et al</u>, 07-2-00916-3
    Grays Harbor County Superior Court

    <u>In re the PRP of Matthew G. Silva</u>, 60439-2-I
    Washington State Court of Appeals, Division One

Dear Mr. McKenna:

By this letter, I am notifying you that Assistant Attorneys General (AAGs)
Frinell, Berney and Holland are participating in the obstruction of my
litigation of the above-entitled causes, thereby blocking my ability to
proceed with a myriad of other cases which challenge the fact and/or
conditions of my confinement.  The obstruction is being accomplished by the
withholding of deposition transcripts and recordings in the Thompson case,
by your office defending criminal misconduct that is being perpetrated by
Washington State Department of Corrections (WDOC) personnel, and by the
illegal withholding of all my legal files and law books.

On October 10th and 11th, depositions were scheduled with two defendants in
the Thompson matter.  Stafford Creek Corrections Center (SCCC) staff
unlawfully mis-directed cassette tapes I had sent to record the depositions.
AAG Frinell either participated in or took advantage of that obstruction,
refusing to allow me to obtain tapes.  When I refused to proceed without a
means of recording, AAG Frinell agreed to provide transcripts from her
tapes if I agreed to hold – rather than continue – the proceedings.
Transcripts were to be provided "within about one week", however your office
has failed to produce them to date.

Moreover, AAGs Frinell and Berney appeared at a November 20th tele-conference
hearing and argued for dismissal of the Thompson case, while obstructing my
ability to proceed with discovery as described above.  It should be noted that
the testimony that is being withheld establishes that state officials have
committed and furthered fraud, injury to public record (RCW 40.16), official
misconduct (RCW 9A.80.010) and other crimes associated with my cases.  Your
office has a duty to obstruct, rather than facilitate, criminal misconduct by
state officials.  <u>State ex rel Dunbar v. State Board of Equalization</u>, 140 Wn
433 (1926); <u>Sanders v. Woods</u>, 121 Wn.App 593, 597 (2004).

40

McKenna Letter
December 15, 2007
Page 2 of 2

You should be on notice that the efforts your staff have taken to obstruct my procession with the specified cases have been effected by the use of mail and wire, contrary to the Racketeering Influenced and Corrupt Organizations (RICO) Act. The facts also support claims of breach of contract, obstruction of justice, fraud and civil conspiracy.

Additionally, your staff are knowingly and intentionally defending the WDOC's illegal seizures and withholding of my legal files and law books. Due to the class of cases that are being obstructed (prisoner fact/conditions claims), the state is obligated to facilitate - not obstruct - my ability to proceed through the pleading stage. Lewis v. Casey, 518 U.S. 343 (1996). Washington law also requires funding regardless of my ability to pay for shipping of my files. RCW 72.09.450. In spite of these legal requirements, I have had to file emergency motions in the above-entitled causes, which your staff are opposing on frivolous procedural grounds.

Based on the above, I am asking for the immediate surrender of all transcripts and tape recordings in the Thompson case; for the return of all my legal files and law books; for a complete, agreed inventory of all files to protect me against WDOC sabotage of my legal documents; for arrangements to be made for any future transfers, so that my legal files and law books are transferred with me; and, for your complete review of the propriety of your continued represent-ation of the defendants in the aforementioned cases.

I declare under penalty of perjury that the foregoing is true and correct.

Sincerely,

Matthew G. Silva

c Jeffrey Sullivan, U.S. Attorney, Western District of Washington
  U.S. Department of Justice, Civil Rights Division
  Scott Blonien, Washington AG Criminal Division Supervisor
  Kimberly Frinell, AAG
  Peter Berney, AAG
  Heidi Holland, AAG
  Silva v. Miller-Stout, et al, 07-2-04544-3 case file
  Silva v. Thompson, et al, 07-2-00916-3 case file
  In re the PRP of Matthew G. Silva, 60439-2-I case file
  file

41



Rob McKenna

# ATTORNEY GENERAL OF WASHINGTON

PO Box 40116 • Olympia WA 98504-0116 • Phone (360) 586-1445

December 27, 2007

Matthew Silva #957176
Washington State Penitentiary
1313 N. 13th Avenue
Walla Walla, WA  99362

Dear Mr. Silva:

On behalf of Attorney General Rob McKenna, thank you for your letters of November 26 and December 15, 2007. I am the Senior Assistant Attorney General who heads the Criminal Justice Division, and I have been asked to respond on his behalf.

Your letters ask this office for assistance. The Attorney General's Office serves as legal counsel to state agencies and certain elected officials and cannot, by law, provide legal advice to private citizens.

While I appreciate your confidence in this office to assist you, I am unable to do so. You have complained about this office representing certain Department of Corrections employees in Silva v. Thompson, et al, Grays Harbor Superior Court Cause No. 07-2-00916-3, and you allege that the assistant attorney general in this case made comments that were not true during a teleconference hearing on November 20.

You also made reference to Silva v. Miller-Stout, Spokane County Cause No. 07-2-04544-3 and In re the PRP of Matthew G. Silva, Court of Appeals Division One No. 60439-2-I, and you alleged that AAGs Frinell, Berney and Holland are participating in the obstruction of your litigation by withholding depositions and recordings and withholding legal files and law books. I have forwarded copies of your letters and my response to AAGs Berney, Frinell and Holland for their information. I know these attorneys, and I am certain that their conduct remains within the ethical boundaries of the Rules of Professional Conduct. They would not do what you're alleging they have done.

I will not comment on existing litigation.

Sincerely,

JOHN SCOTT BLONIEN
Senior Assistant Attorney General

JSB:sjp

cc:    Jeffrey Uttecht, Superintendent
       Washington State Penitentiary

12

November 1, 2005
Page 2


Peter Berney
Kimberly Frinell
Heidi Holland

# Appendix 3

CLAIM FOR DAMAGES

CLAIMANT: Matthew G. Silva    DOB: 12/26/67

CURRENT ADDRESS: Washington State Penitentiary (WSP), 1313 N 13th Ave, Walla Walla, Washington 99362

PREVIOUS ADDRESS - (6 months): Monroe Correctional Complex (MCC), Monroe, Washington

DATE OF INCIDENT: 10/29/09

LOCATION OF INCIDENT: WSP West Complex (WC) Clinic Salleport, Walla Walla

RESPONSIBLE STATE AGENCY: Washington State Department of Corrections (WDOC)

NAMES OF WITNESSES: Corrections Officer (C/O) Schmidt, C/O Done and about three (3) or four (4) other C/Os who were posted at the WC Clinic Salleport on the morning of 10/29/09

STATE EMPLOYEES WITH KNOWLEDGE OF INCIDENT: WSP Hearings Officer Jurgensen, WC Salleport Booth Officer (10/29/09), Sgt. Allan Wilson, Lt. Linda Michael and others unknown

CONDUCT AND CIRCUMSTANCES CAUSING INJURY: On 10/29/09, C/O David Roberts falsified a report alleging that claimant refused a search, refused to disperse, interfered with staff duties and intimidated staff. He knew the allegations were false. He then asked Sgt. Wilson to have claimant segregated based on the falsified report. Sgt. Wilson did not know the allegations were falsified and relied on them in asking Lt. Linda Michael to authorize segregation. There was no evidence to support C/O Roberts' allegation(s). See Exhibit 1, INITIAL SERIOUS INFRACTION REPORT. There were at least three (3) or four (4) other eyewitnesses to the incident, which occurred directly in front of a video camera. None of the witnesses would fill out a witness statement supporting C/O Roberts' report. In fact, C/O Schmidt issued an incident report that completely contradicted C/O Roberts' falsified statements on all material points. See Exhibit 2, INCIDENT REPORT.
C/O Roberts put claimant in handcuffs and placed him in the WC Clinic Salleport holding cell for over one hour. Claimant notified C/O Roberts that he suffered from an injured right (R) shoulder and that the handcuffs were causing serious pain. C/O Roberts unnecessarily kept claimant in handcuffs inside the holding cell for over one (1) hour, contrary to WDOC and WSP policy.
Lt. Michael reviewed the reports and ordered claimant's transfer to the WSP Intensive Management Unit (IMU) from the general population, where claimant had been housed. See Exhibit 3, INFRACTION REVIEW CHECKLIST and SEGREGATION AUTHORIZATION. She knew there was no evidence to support the infraction(s) but she ordered claimant's transfer anyway. IMU staff relied on C/O Roberts' falsified report and Lt. Michael's unsupported segregation authorization when they accepted and held claimant in the IMU. Claimant was restrained there from 10/29/09 through 11/13/09 without cause or a hearing. Claimant wrote a kite to WSP Hearings Officer Jurgensen asking to be released from the IMU but no response was issued.

45

/

CLAIM FOR DAMAGES
10/29/09 Incident
Page 2 of 2

On 11/2/09, claimant was served with the infraction report and supporting papers. Claimant asked – both verbally and in writing – that the video of the incident be reviewed. See Exhibit 4, DISCIPLINARY HEARING NOTICE / APPEARANCE WAIVER. WSP staff had a duty to preserve the said video but failed to do so. That same day, claimant prepared a defense memo accurately portraying what happened and arguing that the infraction should be dismissed. See Exhibit 5, DISCIPLINARY HEARING MEMORANDUM. The hearing was supposed to be held on 11/3/09 but no hearing was held. On 11/10/09, claimant finally submitted claimant's defense memo (Exhibit 5) and asked to be released from the IMU. See Exhibit 6, 11/10/09 OFFENDER'S KITE. On 11/13/09, Hearings Officer Jurgensen ordered claimant's release from the IMU without a hearing.

Finally, on 11/20/09, Hearings Officer Jurgensen held a hearing and dismissed the infraction. The reason for the dismissal was that WSP staff had violated their duty to preserve the video evidence. See Exhibit 7, DISCIPLINARY HEARING MINUTES AND FINDINGS and INFRACTION SANCTION NOTIFICATION. Under the doctrine of spoliation of evidence, a legal presumption exists that the video would have supported claimant's claim that C/O Roberts falsified his report.

Based on C/O Roberts' fraudulent report and Lt. Michaels' unsupported segregation authorization, claimant was falsely imprisoned in the IMU for sixteen (16) days. During that time, claimant was subjected to illegal conditions. See Exhibit 8, 12/13/09 letter from Silva to Vail/Sinclair. No WDOC staffmember responded to claimant's letter (Exhibit 8) within ten (10) working days, contrary to WDOC Policy 110.300.

Prior to the 10/29/09 incident, WDOC and WSP supervisory staff knew that C/O Roberts habitually harasses and torments prisoners. He has been grieved repeatedly for issuing falsified infraction reports, harassment, verbal and other abuses against inmates. The said supervisory staff failed to train and/or discipline C/O Roberts, and their inaction tacitly authorized his misconduct against claimant.

The acts and omissions of the WDOC's employees amount to torts that include but are not limited to negligence, fraud, false imprisonment and outrage. As a result of the tortious conduct of Washington State and it's agents, claimant suffered wrist and shoulder pain, illegal segregation, mental anguish, emotional distress, loss of claimant's hearing in Thurston County Superior Court (Exhibit 8 at page 3), humiliation, degradation, sleep deprivation and other injuries and damages to be proven at trial.

CLAIM FOR DAMAGES: Claimant hereby claim damages from Washington State in the amount of $100,000.00.

VERIFICATION: Claimant declares under penalty of perjury that the foregoing is true and correct. Signed this 5ᵗʰ day of February, 2010.

MAILED 2/9/10
VIA LEGAL MAIL

MATTHEW G. SILVA, claimant
WDOC/957176
Washington State Penitentiary
1313 N 13th Ave
Walla Walla, WA 99362

46    2

# EXHIBIT 1

3



**DOC** STATE OF WASHINGTON
DEPARTMENT OF CORRECTIONS

**INITIAL SERIOUS INFRACTION REPORT**

11-B                                                                      #29

| Date of Infraction | Offender Name (Last, First) | DOC Number | Housing Assignment |
|---|---|---|---|
| 10-29-09 | Silva, Matthew | 957176 | E-W-133   MSD 12 |

| Rule Violation #(s) |
|---|
| 556, 599, 558, 663 |

| Time Occurred | Place of Incident (Be Specific) | | Date Occurred |
|---|---|---|---|
| 0815hrs | W.C. Clinic Salleport | **RECEIVED** | 10-29-09 |

| Witness (1) | Days Off | Witness (3) | | Days Off |
|---|---|---|---|---|
| Schmit C  # 7568 | F. & S. | | | |
| Witness (2) | Days Off | Witness (4) | | Days Off |
| | | | | |

RECEIVED
OCT 3 0 2009
WSP HEARINGS OFFICE

### NARRATIVE

State a concise description of the details of the rule violations, covering all elements and answering the questions of When? Where? Who? What? Why? and How?  Describe any injuries, property damage, use of force, etc.  Attach all related reports.

on 10-29-09 at approx. 0815hrs inmate Silva, M. # 957176 came into the clinic salleport to go to the Law Library and was ordered to clear the metal detector with his legal work, 556.He repeatedly tried and would not listen to orders or directions from staff. Instead he became verbaly abusive, and very disruptive by raiseing his voice and telling staff what he could and could not do, while cutting in and around inmates, This included waveing his arms around and to control this inmate i put cuffs on him and placed him in the holding cell. This inmate by raiseing his voice made it impossiable to try and talk to other inmates and processe them, I also belive he was being challengeing and trying to intimidate me so he would not have to clear the metal detector or his legal work would not have to. 663.

| Reporting Staff Name (Last, First) (Print Name) | Shift | Days Off |
|---|---|---|
| Roberts David C | 2nd Shift | S & S |

| Evidence Taken | Evidence Case Number | Evidence Locker Number | Photo Submitted |
|---|---|---|---|
| ☐ Yes  ☒ No | | | ☐ Yes  ☒ No |

| Disposition Of Evidence (If Not Placed In Locker) | Placed In Pre-Hearing Confinement |
|---|---|
| | ☐ Yes  ☐ No |

### NAME(S) OF ALLEGED VICTIMS OF THIS INCIDENT

| Last, First | | | | DOC# |
|---|---|---|---|---|
| 1) | Staff ☐ | Volunteer/Visitor/Other ☐ | Offender ☐ | |
| Last, First | | | | DOC# |
| 2) | Staff ☐ | Volunteer/Visitor/Other ☐ | Offender ☐ | |

| RELATED REPORTS ATTACHED | ☐ Supplemental | ☐ Background Memos |
|---|---|---|
| | ☐ Staff Witness Statements | ☐ Medical |
| | ☐ Tele-Incident | ☐ Use of Force |
| | ☐ Other (Specify) | |

| Reporting Staff Signature | Date |
|---|---|
| C/o David P Roberts # 7725 | 10-29-09 |
| Infraction Review Officer Signature | Date |
| Sgt L Michael-Violette | 10-29-09 |

**The contents of this document may be eligible for public disclosure.  Social Security Numbers are considered confidential information and will be redacted in the event of such a request.  This form is governed by Executive Order 00-03, RCW 42.56, and RCW 40.14.**

4
48

# EXHIBIT 2

49 ⁵



STATE OF WASHINGTON
DEPARTMENT OF CORRECTIONS

**INCIDENT REPORT**

☐ Confidential

| Date/Time of Incident | Offenders Involved | DOC Number | Living Unit |
|---|---|---|---|
| 10-29-09 0815 | SILVA, MATTHEW | 957176 | EW133 |

| Location | Witnesses |
|---|---|
| W/C CLINIC SALLEPORTE | C/O ROBERTS 7729 |

Use of Force Incident? ☐ Yes   ☒ No

**DETAILS:** *Who was involved, what took place, how did it happen, description of any injuries, damage, use of force, etc. Attach additional sheet, if necessary.*

On 10-29-09 at 0815 hours Officer D. C. Roberts 7729 had problems with inmate Matthew Silva 957176 clearing the west complex clinic metal detector. Inmate Silva's legal folder could not clear it. Both Silva and Roberts argued back and forth about policy on clearing the metal detector. Officer Roberts ordered Silva to cuff up, and he applied wrist restraints onto Silva, then placed him into the clinic holding cell. Officer Schmidt and Officer Done escorted Silva to IMU South without further incident.

**Immediate Action Taken:**

| Staff Signature | 10-29-09 | C/O | Corey Schmidt |
|---|---|---|---|
| | Date | Title | Staff Name (Please Print) |

**TO BE COMPLETED BY CHIEF INVESTIGATOR**

| Date/Time Received | | Incident Number |
|---|---|---|
| Investigation Assigned To | By | Date |

*The contents of this document may be eligible for public disclosure. Social Security Numbers are considered confidential information and will be redacted in the event of such a request. This form is governed by Executive Order 00-03, RCW 42.56, and RCW 40.14.*

50  6

# EXHIBIT 3

51 7

**DOC**    STATE OF WASHINGTON
DEPARTMENT OF CORRECTIONS                    **INFRACTION REVIEW CHECKLIST**

| Offender Name: Silva, Matthew | *957176* | WAC # 556 / 663 |
|---|---|---|

| ☒ | Examine the infraction to ensure that each field is filled in properly and written legibly. |
|---|---|
| ☒ | Ensure the offender's name and DOC number are recorded correctly. |
| ☒ | Read the infraction report narrative and ensure the following elements are included:<br>☒ Who?<br>☒ What?<br>☒ Where?<br>☒ When?<br>☒ Why?<br>☒ How? |
| ☒ | Check to be sure that the infraction violations at the top of the report correspond with the written information *and* are appropriate for the incident.<br>NOTE: The reviewer may; 1) require that the report be revised, rewritten, or reinvestigated by the reporting staff member to ensure the alleged facts support the charges, or 2) add, dismiss, delete or reduce the indicated WAC violations as appropriate, based upon the information and/or evidence provided by the reporting staff and any mitigating factors. |
| ☒ | Ensure the report is factual, without assumptions, feelings, beliefs or what the reporting staff "thinks" may have happened. |
| ☒<br>N/A | Ensure alleged victims, if any, of the incident are recorded and accurately documented in the "Name(s) of alleged victims of this incident" fields. |
| ☒<br><br>N/A | Ensure the report includes supporting documentation if the incident included:<br>☐ Injuries? Medical Response?<br>☐ Witnesses?<br>☐ Property Damage?<br>☐ Use of Force?<br>☐ Teleincident Report?<br>☒ Other Supplemental Information? |
| ☒ | Ensure all evidence has been collected, secured, and logged properly in accordance with policy and facility procedures. Did you document:<br>☒ Evidence taken?<br>☒ Evidence Case Number assigned?<br>☒ Whether or not the evidence was placed in an evidence locker?<br>☐ The disposition of the evidence if not placed in locker?<br>☐ Photos submitted? |
| ☒ | Complete the "Placed in Pre-hearing Confinement" field by checking the "Yes" or "No" boxes. |
| ☒<br><br>N/A | If confidential information has been submitted, have you:<br>☐ Reviewed the information to ensure it is consistent with other reports?<br>☐ Checked to ensure the documents are marked or stamped as "Confidential"?<br>☐ Requested that the staff who received the information initiate DOC 05- 392, Confidential Information Report and forward it to designated facility staff?<br>☐ Included a summary of confidential information with the infraction report? |
| ☒ | The Initial Serious Infraction report (with attachments, if any) is complete. Sign and date the Initial Serious Infraction Report on the line labeled "Infraction Review Officer Signature" (Signature *must* be legible). |
| ☒ | Send the infraction report and any supporting documents to the hearing clerk or designated facility staff. |
| ☐ | The Initial Serious Infraction report has been reviewed and is being returned for the following reason( s):<br>Reason: _____ |
| ☐ | An investigation is required.  Investigation assigned to: _____  _____  _____<br>Name        Date       Time |
| ☐ | Promptly resubmit the infraction report with the corrected / appropriate information, including this Infraction Review Checklist. |

| REVIEWER'S SIGNATURE | PRINT NAME | DATE |
|---|---|---|
| *S. D. Michael* | | *10-29-09* |

The contents of this document may be eligible for public disclosure. Social Security Numbers are considered confidential information and will be redacted in the event of such a request. This form is governed by Executive Order 00-03, RCW 42.17, and RCW 40.14.



**STATE OF WASHINGTON
DEPARTMENT OF CORRECTIONS**

**SEGREGATION AUTHORIZATION**

| Offender's Name<br>Silva, Matthew | DOC Number<br>957176 | Facility<br>WSP/WC | Date Placed in Segregation<br>10-29-09 |
|---|---|---|---|

*Section I*

**REASON FOR PLACEMENT:**

- ☒ THREAT TO OTHERS/SELF/SECURITY
- ☐ OWN REQUEST
- ☒ INFRACTION SUBMITTED
- ☐ SUMMARY OF CONFIDENTIAL INFORMATION
- ☐ OTHER (Explain)

**SPECIAL INSTRUCTIONS:**

- ☐ SPECIAL DIET
- ☐ MEDICATIONS (List Rx)

- ☐ OTHER (Explain)

Requesting Staff Member
Sgt. Allan Wilson #7293

Signature of Authorizing Lieutenant/Correctional Unit Supervisor
Lt. Linda Michael

**SPECIFIC REASONS FOR PLACEMENT AND RECOMMENDATION TO SUPERINTENDENT**

At approximately 0830 ☒ a.m. ☐ p.m. on 10-29-09 offender Silva, Matthew was placed in ☐ Administrative Segregation pursuant to WAC 137-32-005 and/or was placed in ☒ Pre-Hearing Confinement per WAC 137-28-280 due to infraction(s).

Details for reason(s) for placement are as follows:
Inmate Silva, Matthew #957176 was placed in IMU-South on awaiting action for being disruptive and intimidating staff down at the WC Salle Port. Infraction submitted by C/O David Roberts. No Use of Force necessary.

Reviewed and Approved By: (Superintendent/Designee)     Date     Escorting Staff
C/O Schmidt and C/O Done

*Section II*

| NEXT ACTION DUE BY:<br>Date: 11-2-09 | NOTIFICATION OF INITIAL REVIEW:<br>Time: on call     Date: |
|---|---|

Offender's Signature     Date

Signature of Serving/Reporting Staff     Date

Offender Refuses to Sign–Witness Signature     Date

*The contents of this document may be eligible for public disclosure. Social Security Numbers are considered confidential information and will be redacted in the event of such a request. This form is governed by Executive Order 00-03, RCW 42.56, and RCW 40.14.*

DOC 17-075 (Rev. 8/17/07)     DOC 320.200, DOC 460.000

# EXHIBIT 4

10
54

**FORM C**

**DOC** STATE OF WASHINGTON
DEPARTMENT OF CORRECTIONS

# DISCIPLINARY HEARING NOTICE/APPEARANCE WAIVER

Working Together for Safe Communities

Infraction Group Number: 29

| Offender Name SILVA, Matthew  *MSD12* | DOC Number 957176 | Facility WSP-IMU | Date 10/30/2009 |
|---|---|---|---|
| Type of Review ☒ Disciplinary | Hearing Scheduled For: 11/6/2009 Date | Location WSP-IMU | Time 0730 |

REASON FOR HEARING (Include all Allegations of Misconduct, if Appropriate)
556 - Refusing to submit or cooperate in a search when ordered to do so by a staff member
663 - Using physical force, intimidation or coercion against any person

_____ ☐ I HAVE BEEN PROVIDED A CERTIFIED SIGN LANGUAGE INTERPRETER
Interpreter Name/Date ☐ I HAVE BEEN PROVIDED WITH A SPANISH TRANSLATION OF THE CHARGES AGAINST ME ON
SE ME HA DADO UNA TRADUCCION AL ESPANOL DE LOS CARGOS EN ME CONTRA EL DIA

_____ AT _____ _____
Date/FETCHA          Time/HORA      Offender Signature/FIRMA DE OFENSOR

**OFFENDER RIGHTS:**

☒ YOU HAVE THE RIGHT TO REMAIN SILENT AT THE HEARING. IF YOU CHOOSE TO REMAIN SILENT, YOUR SILENCE MAY BE USED AGAINST YOU AND THE DECISION WILL BE BASED ON THE EVIDENCE PRESENTED.

☒ YOU MAY WAIVE YOUR APPEARANCE AT THE HEARING.

☒ YOU DO NOT HAVE A RIGHT TO CROSS EXAMINE WITNESSES, HAVE THE INFRACTING STAFF PRESENT AT THE HEARING, OR HAVE A POLYGRAPH OR OTHER SUPPLEMENTAL TEST.

☒ YOU MAY REQUEST WITNESS STATEMENTS AND/OR THAT STAFF, OFFENDERS, OR OTHER PERSONS BE PRESENT AS WITNESSES, UNLESS IT IS DETERMINED BY THE HEARING OFFICER THAT DOING SO WOULD BE UNDULY HAZARDOUS TO FACILITY SAFETY OR SECURITY. (List Witnesses Below)

| STAFF NAME | STATEMENT | WITNESS | POSITION | OFFENDER NAME | STATEMENT | WITNESS | DOC NUMBER |
|---|---|---|---|---|---|---|---|
| | ☐ | ☐ | | *Ros & U. Tep* | ☐ | ☐ | |
| *N o i v e* | ☐ | ☐ | | *Bc locked AF* | ☐ | ☐ | / |
| | ☐ | ☐ | | | ☐ | ☐ | |

☒ CRIMINAL CHARGES MAY BE PENDING. ANYTHING YOU SAY HENCEFORTH MAY BE USED AGAINST YOU IN A COURT OF LAW.

STATUS OF CRIMINAL CHARGES: ☐ NONE  ☒ UNKNOWN  ☐ PENDING IN _____ _____
                                                              COUNTY          CHARGES

☒ YOU HAVE THE RIGHT TO REVIEW ALL RELATED REPORTS AND A SUMMARY OF ANY CONFIDENTIAL INFORMATION.

☒ YOU MAY REQUEST A STAFF ADVISOR.                                    ☐ REQUESTED  ☒ WAIVED

☒ YOU MAY REQUEST AN INTERPRETER (if unable to speak and/or understand the English language).  ☐ REQUESTED  ☒ WAIVED

☒ YOU MAY REQUEST A CERTIFIED SIGN LANGUAGE INTERPRETER IF YOU ARE HEARING IMPAIRED.          ☐ REQUESTED  ☒ WAIVED

☒ YOU MAY APPEAL THE DECISION AND/OR SANCTIONS TO THE SUPERINTENDENT/FACILITY SUPERVISOR.

☒ IF YOU ARE AN INDETERMINATE SENTENCE CASE AND WITHIN 60 DAYS OF AN ESTABLISHED RELEASE DATE, A GUILTY FINDING COULD RESULT IN THE CANCELLATION OF YOUR RELEASE DATE.

☒ I, _*SiLVA*_, DOC # _*957176*_ WAIVE MY RIGHT TO THE REQUIRED 24 HOURS NOTICE PRIOR TO BEING SEEN BY THE (DISCIPLINARY) HEARING OFFICER AND AUTHORIZE THE HEARING OFFICER TO MAKE A DISPOSITION REGARDING THE INFORMATION AND EVIDENCE PRESENTED TO THE HEARING OFFICER AS PERTAINS TO MY PARTICULAR SITUATION.

☒ I _____, DOC # _____ WAIVE MY RIGHT TO ATTEND THIS SCHEDULED HEARING. I UNDERSTAND THAT THE HEARING WILL BE HELD IN MY ABSENCE.

COPY OF THIS FORM AND INFRACTION, WITH ATTACHMENTS, RECEIVED.

*M/att (Reserve all rights)* 11/2/09 _____ _____ _____
Offender/Witness Signature    Date    Time    Staff Signature    Date    Time

Distribution:  **ORIGINAL** – Central File   **COPIES**- Hearing Officer , Offender
DOC 05-093 (Rev. 12/19/08)                                      DOC 450.500, DOC 460.000
                                                                        [4-4236]

11
55

# EXHIBIT 5

12
56

DISCIPLINARY HEARING MEMORANDUM

TO: HEARINGS OFFICER CREWSE
FROM: MATTHEW SILVA    95176    1MU-S/E-4
DATE: 11/2/09                    PAGE 1 OF 3
   RE: INFRACTION #29 DATED 10/29/09

I. FACTS.    ON 10/29/09 AT ABOUT 8:15 a.m., I
ARRIVED AT THE WEST COMPLEX (WC) CLINIC
SALLEPORT ON MY WAY TO THE LAW LIBRARY. THERE
WERE EITHER FOUR (4) OR FIVE (5) CORRECTIONS
OFFICERS (C/O'S) WORKING IN THAT AREA AT THE
TIME. WHEN I TRIED TO PASS THE SALLEPORT METAL
DETECTOR, MY LEGAL FILES SET OFF THE MACHINE. I
ASKED C/O ROBERTS (WHO WAS RUNNING THE DESK AND
CHECKING-OFF NAMES) IF IT WAS POSSIBLE THAT THE
METAL DETECTOR WAS SET TOO HIGH? MY FOLDER HAD
ALREADY PASSED THE E-UNIT METAL DETECTOR, I
EXPLAINED. C/O ROBERTS RUDELY STATED, "YOU DON'T
TELL ME ABOUT THE METAL DETECTOR! YOU GO BACK
OVER TO THAT BENCH AND SHUT YOUR MOUTH! GO THRU
THAT FOLDER AND REMOVE ALL THE STAPLES FROM YOUR
PAPERS!"

   I COMPLIED WITH C/O ROBERTS' DIRECTIVE TO LOOK
THROUGH MY FOLDER BUT COULD NOT FIND ANYTHING.
WHEN I TRIED THE MACHINE AGAIN, IT STILL WENT
OFF. AGAIN, I ASKED C/O ROBERTS IF IT WAS
POSSIBLE THAT THE MACHINE WAS MISCALIBRATED?
IN RESPONSE, C/O ROBERTS WENT ON ANOTHER
TIRADE, SAYING I WAS "GOING TO GET INFRACTED

13
57

HEARING MEMO
11/2/09
PAGE 2 OF 3

AND TAKEN TO THE HOLE" IF I DIDN'T "SIT DOWN AND
SHUT UP!"

AGAIN, I COMPLIED. C/O ROBERTS WENT ON THAT
"IF YOU CAN'T PASS THE METAL DETECTOR THEN YOU'LL
JUST HAVE TO GO BACK". I LOOKED THRU THE
FOLDER AGAIN AND, THIS TIME, FOUND A SPIRAL
NOTEBOOK I HAD NOT SEEN BEFORE. I PULLED IT OUT
AND PUT IT ON C/O ROBERTS' DESK, THEN PASSED THE
METAL DETECTOR. I SHOWED HIM WHAT THE PROBLEM
HAD BEEN BUT HE DID NOT FIND THAT SUFFICIENT.
HE SAID I WAS GOING TO LOSE MY LAW LIBRARY TIME,
THAT I WOULD HAVE TO GO WAIT IN THE CLINIC UNTIL
THE NEXT MOVEMENT BACK, AND THAT HE WOULD BE
KEEPING MY LEGAL FILES WITH HIM.

I SIMPLY ASKED WHY HE WAS GOING TO KEEP MY LEGAL
FILES AND HE TOLD ME TO "TURN AROUND AND CUFF-
UP!" I COMPLIED IMMEDIATELY. AT NO TIME
DID I REFUSE A SEARCH OR WAVE MY ARMS OR
RAISE MY VOICE TO ANYONE.

C/O ROBERTS THEN PLACED ME IN THE HOLDING CELL
AND REFUSED TO TAKE THE CUFFS OFF. I WAS
HELD IN RESTRAINTS FOR ABOUT ONE HOUR, EVEN
THOUGH I NOTIFIED HIM THAT I HAVE AN
INJURED SHOULDER AND WAS IN PAIN.

14

58

HEARING MEMO
11/2/09
PAGE 3 OF 3

WHEN C/O ROBERTS CALLED HIS SUPERVISOR TO REQUEST
THAT I BE TAKEN TO THE HOLE, HE DID NOT SAY
ANYTHING ABOUT "REFUSING A SEARCH". SEE ATTACHED
SEGREGATION AUTHORIZATION.    I HEARD HIM MAKE
THE CALL FROM THE HOLDING CELL.   HOWEVER, AFTER
HE ASKED SGT. WILSON TO HAVE ME SEGREGATED, I
HEARD HIM SAY TO THE OTHER OFFICERS WHO WITNESSED
WHAT HAPPENED: "I'LL JUST WRITE A REPORT THAT
HE REFUSED A SEARCH AND WHATEVER. YOU GUYS
CAN READ IT AND JUST BACK UP WHAT I PUT".

NOT ONE OF THE C/O'S WHO WITNESSED THE INCIDENT
SUPPORT C/O ROBERTS' REPORT.

II ARGUMENT.   THE REPORT DOES NOT SUPPORT A 556
BECAUSE IT STATES THAT I COMPLIED BY
REPEATEDLY TRYING TO PASS THE METAL DETECTOR.
IT ALSO DOES NOT SUPPORT A 663 BECAUSE IT DOES
NOT CONTAIN ANY FACTS THAT AMOUNT TO
INTIMIDATION, AND BECAUSE IT STATES "I BELIVE
(SIC) HE WAS... TRYING TO INTIMIDATE ME", WHICH
IS A FEELING AND NOT EVIDENCE. THE REPORT IS
ALSO FALSIFIED BECAUSE IT OMITS THE KEY FACT
THAT THREE (3) OTHER C/O'S WERE WITNESSES. IT
APPEARS THAT THIS WAS DONE TO COVER UP THE
OTHER OFFICERS' REFUSAL TO LIE FOR C/O ROBERTS.
THE INFRACTION SHOULD BE DISMISSED.

15
59

# EXHIBIT 6

16
60

REC'D 11/20/09 at HEARING



STATE OF WASHINGTON
DEPARTMENT OF CORRECTIONS    **OFFENDER'S KITE**
**PAPELETA DE PETICIÓN DEL INTERNO**

WSI

---

**OFFENDER NAME (PRINT)   NOMBRE DEL INTERNO (LETRA DE MOLDE)**
MATHEW SILVA

| DOC NUMBER/NÚMERO DOC | UNIT, CELL/UNIDAD, CELDA | DATE/FECHA |
|---|---|---|
| 957176 | IMU-S 1 8-4 | 11/10/09 |

**DESIRE INTERVIEW WITH OR ANSWER FROM/DESEA ENTREVISTA CON O RESPUESTA DE**
E. CREWSE, DISCIPLINARY HEARINGS - IMU

☐ Interpreter needed for_____ (language).
☐ Necesito intérprete para_____ (idioma).

**REASON/QUESTION**
**RAZÓN/PREGUNTA**

    PLEASE FIND ATTACHED MY 11/2/09
"DISCIPLINARY HEARING MEMORANDUM". I
AM WONDERING WHY I AM STILL IN THE
HOLE (14) DAYS AFTER BEING SEGREGATED
ON THIS RIDICULOUS INFRACTION? I WROTE
MR. JURGENSEN BECAUSE YOUR SERVICE C/O
SAID YOU WERE GONE, BUT THERE WAS NO
RESPONSE. IF THERE IS GOING TO BE ANOTHER
DELAY CAN YOU RELEASE ME UNTIL THE
HEARING? THANK YOU.

SIGNATURE/FIRMA                          DAYS OFF/DIAS LIBRES

    P.S. DID YOU RECEIVE MY KITE ABOUT
**RESPONSE**     GETTING THE TAPES FROM 2008?
**RESPUESTA**

---

| RESPONDER/PERSONA QUE RESPONDE | DATE/FECHA |
|---|---|
|  |  |

Distribution:  **WHITE/YELLOW**-Responder, **YELLOW**-Return to Offender with Response, **PINK**-Offender keeps
Distribución: **BLANCA/AMARILLA**-Persona que responde, **AMARILLA**-Devuelva al interno con respuesta, **ROSA**-interno
DOC 21-473 E/S (Rev. 5/20/09)

17
61

# EXHIBIT 7

18
62

**FORM D**

STATE OF WASHINGTON
DEPARTMENT OF CORRECTIONS

## DISCIPLINARY HEARING MINUTES AND FINDINGS

Infraction Group Number: 29

| Offender Name (Last, First) | | | DOC Number |
|---|---|---|---|
| SILVA, Matthew | | | 957176 |

| Date of Hearing | Time of Hearing | Violation Date | Waived 24 Hours Notice | ☐ Yes | ☐ No |
|---|---|---|---|---|---|
| 11/6/2009 | 0730 | 10/29/2009 | Waived Appearance | ☐ Yes | ☐ No |

**OFFENDER'S PLEA:** Guilty          Not Guilty

| INTERPRETER: | ☐ Yes | ☐ No | Name: _____ |
|---|---|---|---|
| STAFF ADVISOR: | ☐ Yes | ☐ No | Name: _____ |
| COMPETENCY CONCERN: | ☐ Yes | ☐ No | HEARING IMPAIRED: ☐ Yes ☐ No |

WITNESS STATEMENT RETURNED: ☐ Yes  ☐ No
WITNESS/STATEMENT DENIED: ☐ Yes  ☐ No
Reason:

SUMMARY OF TESTIMONY (LIST WITNESSES TESTIFYING) / EVIDENCE USED / FINDINGS / REASONS FOR CONTINUANCES, DECISIONS, AND SANCTIONS/ANY RELEVANT INFORMATION: _Infraction Report, Incident Report by C/O_
_Schmidt._
_11-6-9 Cont. - DHO sick - lack of time._
_11-13-9 Con't - Lack of time and video not received_
_instructions give to release S/m from DHC_
_11-20-9 Silva requested a video, which has been_
_taped over and no longer exists._

**LIST EACH WAC 137-28 RULE VIOLATION SEPARATELY:**

| VIOLATION NO. | FINDING GUILTY | FINDING NOT GUILTY | FINDING DISMISSED | FINDING REDUCED | REASON |
|---|---|---|---|---|---|
| 556 | | | X | | _Per Barnhouse Decision_ |
| 663 | | | X | | _that if a video existed_ |
| | | | | | _and is not available the_ |
| | | | | | _infraction must be Dismissed_ |
| | | | | | |

SANCTION(S): _Dismissed_

REASON FOR SANCTION(S):

RECOMMENDATIONS (Non-Sanction):

I HAVE RECEIVED A COPY OF THIS FORM

| X _____ | 11/20/09 | |
|---|---|---|
| Offender or Staff Witness Signature | Date 1-20-9 / 11-6-9 | Time 0912 / 1425 |
| _____ | | |
| Hearing Officer Signature | Date | Time |

The contents of this document may be eligible for public disclosure. Social Security Numbers are considered confidential information and will be redacted in the event of such a request. This form is governed by Executive Order 00-03, RCW 42.56, and RCW 40.14.



63

STATE OF WASHINGTON
DEPARTMENT OF CORRECTIONS

**INFRACTION SANCTION NOTIFICATION**

Inmate Name and Number    **Silva, Mathew**    **957176**    Cell:    **E116**

On:    10/29/2009    You were infracted for violating WAC Rules 13-28-025-

The administrative review and appeal process has been completed.

You selected to :    ☐ Appeal    ☐ Not Appeal    ☐ Negotiated Diciplinary Agreement

Your Appeal was:    ☐ Granted    ☐ Denied    ☐ Other; and the following sanction is to be imposed:

Your sanction is:    *Dismissed*

Your sanction is to begin at 6:00 a.m. on            and will end at 10:00 p.m. on

NOTE: Per WAC 137-28, offenders recieving the sanction of Cell Rectriction/Confinement will be required to remain in their cell except for:

a. Attendance at work, school, religious services, or scheduled medical / dental / mental health appointments

b. Meals

c. One ten (10) minute shower per day, at a time and place specified by the Unit Sergeant.

d. All regular and extended family visits may be denied if the infraction is related to visiting.

e. Law library and legal telephone calls must be pre-approved, in writing, by your Counselor or the Unit Sergeant.

f. Any other activities must be requested in writing and approved by the Unit Manager or Unit Sergeant.

When going to and returning from an authorized activity, you are not to loiter, engage in other activities, make trips or stop and converse with anyone. You are to use the shortest route and proceed at a safe, but rapid speed. You must have approval to do any other activity.

NOTE: Extra duty is to be performed at times and places to be determined by staff. Refusal and/or failure to perform any extra duty assigned will result in an infraction for a (658).

**Unit Sergeant / Supervisor**    Lt. Jurgensen

NOTE: It is your responcibility to comply with all requirements and restrictions of the sanctions imposed on you. Failure to do so will result in your being infracted for WAC 658.

I have read and recieved a copy of this form and understand the sanction imposed.

Offender's Signature and DOC Number: _____

Date and Time Served: _____

Serving Staff Signature / Printed Name: _____

The contents of this document may be eligible for public disclosure. Social Security Numbers are considered confidential information and will be redacted in the event of such a request. This form is governed by Executive Order 00-03, and RCW 40.14.

Distribution:    **WHITE**    - Unit File    **CANARY**    - Offender

DOC 20-373 (REV. 2/12/2003) WSP

20
64

EXHIBIT 8

Matthew G. Silva
WDOC 957176
Washington State Penitentiary
1313 N 13th Ave
Walla Walla, WA 99362

December 13, 2009

Eldon Vail, Secretary
Washington State Department of Corrections
P.O. Box 41101
Olympia, WA 98504

Steve Sinclair, Superintendent
Washington State Penitentiary
1313 N 13th Ave
Walla Walla, WA 99362

Re: Illegal Intensive Management Unit (IMU) Conditions

Dear Mr. Vail and Mr. Sinclair:

I was held in the IMU-South unit at the Washington State Penitentiary (WSP)
from 10/29/09 to 11/13/09. Although Washington State Department of
Corrections (WDOC) Policy 460.000(VI)(F) mandates that hearings for prisoners
placed in pre-hearing confinement will be held within 3 working days, I was
held on pre-hearing status for 16 days. To my knowledge, pre-hearing
confinement was not extended by the WSP Superintendent. From what I could
ascertain, WSP staff are illegally using excessive periods of segregation as a
mechanism to keep their new IMU facility filled to capacity.

A number of other illegal conditions were also imposed during my stay in
IMU-South. First, no medical assessment was performed when I was admitted.
See WDOC Policy 320.255(I)(A). Because of this defect in my admission, it
took me a number of days to obtain my medication. From what I found, failure
to perform mandatory medical assessments upon intake is standard practice in
IMU-South.

Next, the cells I was held in (D-12 and E-4) were maintained at extremely cold
temperatures. It was too cold to engage in normal activities so I mostly
stayed on my bunk under two (2) towel-thin blankets. Other prisoners I spoke
to said the cold cell temperatures was a regular practice in IMU-South. They
claimed that numerous grievances had already been filed but that
administrators have knowingly refused to correct the condition. I estimate
that it was kept between 50°-60° in the cells. The appearance is that
supervisors there are using cold temperatures to control behavior and/or to
punish inmate residents. These conditions violate the Eighth Amendment and
state regulations. See e.g. WDOC Policy 320.255(I)(B)(2).

After being admitted, I was denied any and all reading materials for four (4)
days. This deprivation was due to the written policy that only allows inmates
to obtain books on Monday and Thursday mornings. Being locked in a
segregation unit 24-hours-per-day without anything to read is cruel and
unusual punishment tantamount to psychological torture. This condition
violates the First and Eighth Amendment, and state regulations. See e.g. WDOC
Policy 510.010.

22
66

Vail-Sinclair Letter
December 13, 2009
Page 2 of 3

At the same time, IMU-South staff denied my repeated requests for a Bible. I
notified numerous staff and supervisors that I am a Protestant Christian and
that my religious beliefs require me to read the Bible every day. In spite of
my requests, staff denied me a Bible for four (4) days. Then on 11/2/09,
first shift staff opened my cuff-port in the early morning hours and threw a
Holy Bible on the floor of my cell. This desecration of the Holy Scriptures
is absolutely unacceptable and degrading to everything I believe in. Upon
inquiry, I learned that no IMU-South staffmembers are trained on controlling
WDOC Policy or the Religious Land Use And Institutionalized Persons Act
(RLUIPA); none of them believe they have a duty to facilitate the religious
practices of prisoners. No Chaplain or volunteer made contact with me either.
Overall, these conditions violated the First Amendment, RLUIPA and state
regulations. See e.g. WDOC Policy 320.255(I)(B)(15)(a) and (II)(A)(6).

During the entirety of my IMU-South housing, staff employed seriously
unsanitary and dangerous food-handling practices. Every meal, food was served
by untrained corrections officers (C/O's) without facial or regular hair nets.
Hot food was always served cold or tepid (except for one dinner meal after I
complained). Procedure in all IMU-South pods is for C/O's to place metal pans
of open food trays on a shelf underneath the stairs, while they get organized
for tray delivery. The stairs are made of steel grating, so when other C/O's
walk up and down the stairs, they are walking directly over open trays of food
just before they are served to inmates. My food had hair and other debris in
it nearly every meal. All of these deficiencies violate the Eighth Amendment
and state regulations. See e.g. WDOC Policy 320.255(I)(B)(3) and WDOC Policy
240.100.

Cell cleaning practices were also sorely inadequate and unsanitary. Supplies
were passed out only once per week even though prison rules require daily cell
cleaning. The gear that was provided was insufficient. For example, the
"toilet brush" was a hand-held brush that required me to place my hand inside
the filthy toilet bowl without any gloves. No mop was provided. "Cleaning
solution" was one small, dirty rag taken from a bucket used to clean
cell-after-cell. My cell was disgusting when I arrived and it was even worse
by the time I left. Overall, these conditions violate the Eighth Amendment
and state regulations.

IMU-South staff also used unique practices and conditions that resulted in
excessive sleep deprivation and interruption. First, inmates are not allowed
pillows or a reasonable substitute. This makes sleeping very difficult and
sometimes painful. Next, staff maintain a practice of banging on walls for
about five (5) minutes in each pod, about every eight (8) hours. Then, on
that same regular schedule, staff open-and-slam every metal pipe-chase door in
the pod (there is one between each cell). Staff also make unnecessary noise
by running up-and-down the metal stairs at all hours of the day and night.
Finally, I was awakened about every 4-6 hours "for count" by staff demanding
that I "show skin". The problem is that the cells are so cold, covering one's
entire head and body was the only way to try to keep warm. The overall effect
was constant sleep deprivation and/or interruption, which violates the Eighth
Amendment and state regulations.

Vail-Sinclair Letter
December 13, 2009
Page 3 of 3

Perhaps most importantly, IMU-South staff completely denied any and all access
to legal materials. My requests for my own legal files were ignored while
staff deprived me of any means of conducting legal research. Upon admission,
I notified staff of urgent court deadlines I labored under in a number of
cases. Although I was never provided any legal materials, my understanding is
that IMU-South uses a paging system which requires inmates to request cases
and statutes by exact citation. This practice has been deemed
unconstitutional. See Toussaint v. McCarthy, 801 F.2d 1080, 1108-10 (9th
1986). Because the right to access the courts is the most important right a
prisoner possesses, the complete denial of legal access in the IMU-South is
indefensible, unconstitutional and also violates state regulations. See e.g.
WDOC Policy 320.255(I)(B)(15)(d) and (II)(A)(1), WDOC Policy 590.500
(effective date 5/24/04). Please take notice that, because I was unprepared
for a telephonic hearing on 11/6/09, my motion for a restraining order was
denied in Silva v. WDOC, et al, Thurston County Superior Court No.
09-2-00443-6. I was also unable to participate in my other cases and adverse
rulings were entered against me as well.

You should also be aware that no facility risk management team member nor
superintendent / associate superintendent made weekly contact with me,
contrary to WDOC Policy 320.255(IX)(E)(F). Overall, the conditions I was
subjected to in IMU-South were blatantly illegal and unconstitutional. I
tried to file a blanket grievance about these overall conditions but WSP
Grievance Coordinator Lori Scamahorn refused to allow it. Therefore, in an
effort to exhaust any administrative remedies that may be available, I am
hereby requesting a complete investigation, appropriate corrections and
monetary damages.

Finally, I had my family email Mr. Sinclair about a few of these conditions on
about 11/1/09. He failed to conduct a proper investigation and issued an
improper response basically upholding any and all IMU-South conditions and
staff conduct. By this letter, I am complaining about Mr. Sinclair's
authorization of the illegal conditions described herein. These are basic
violations that need to be corrected, not covered up.

Thank you for your time and attention to this important matter. I declare
under penalty of perjury that the foregoing is true and correct.

Sincerely,

Matthew G. Silva

c Christine Gregoire, Governor
  Rob McKenna, Attorney General
  file

24
68

# Appendix 4



**STATE OF WASHINGTON**

# OFFICE OF FINANCIAL MANAGEMENT

RISK MANAGEMENT DIVISION

*300 General Administration Bldg • PO Box 41027, Olympia, WA 98504-1027*
*(360) 902-7303 • Fax (360) 586-1789 • www.ofm.wa.gov*

February 16, 2010

Matthew Silva    957176
Washington State Penitentiary
1313 North 13th Avenue
Walla Walla, WA  99362

RE:    Tort Claim # 31073471

Dear Mr. Silva:

The Office of Financial Management, Risk Management Division, has reviewed the tort claim you filed against the state of Washington on February 12, 2010. This acknowledgment does not constitute a review of the legal adequacy of the claim, nor should it be construed as a waiver of any deficiencies that may exist.

Your claim involves administrative procedures that are within the authority of the Department of Corrections (DOC).  The issues you describe relate to an infraction imposed upon you by DOC. Tort law does not cover infraction disputes. If you believe that you have been wrongfully infracted, you have appeal rights at the institution in accordance with their established administrative procedures. Your claim presentation confirms you were provided with due process which led to the dismissal of your infraction on November 20, 2009.

Our review does not support a finding upon which to base any payment, as required under Chapter 4.92 RCW.  The state of Washington will take no further action on your tort claim.

Sincerely,

Michael Hopkins
Tort Claims Investigator
(360)902-7310

7⁰

# Appendix 5



Confidential
Offender
Copy

**STATE OF WASHINGTON
DEPARTMENT OF CORRECTIONS**

LOG I.D. NUMBER
**1106221**

**APPEAL TO LEVEL III
APELACIÓN AL 3ER NIVEL**

| Name:<br>NOMBRE: | Last<br>APELLIDO | First<br>PRIMERO NOMBRE | Middle<br>2DO NOMBRE | DOC Number<br>NUMERO DOC | Facility/<br>FACILIDAD | Unit/Cell<br>UNIDAD/CELDA |
|---|---|---|---|---|---|---|
| | Silva, Matthew G | | | 957176 | SCCC | H6-A3 |

| Community Corrections Office<br>OFICINA DE CORRECCIONES EN LA COMUNIDAD | | Date Typed<br>FECHA ESCRITA<br>5/9/11 | PART B – OBTS INFORMATION INFORMACION DE OBTS | | |
|---|---|---|---|---|---|
| | | | Remedy/REMEDIO<br>08 | Resolution/RESOLUCION<br>04 | Pending/PENDIENTE |

**PART A – APPEAL TO LEVEL III/PARTE A - APPELCIÓN AL 3ER NIVEL**     Response due/Respuesta-requerida en

**I WANT TO APPEAL:** The level two response is inadequate because it fails to address the issues. First, it is illegal for the government to sensor a person's grievance. It violates the first amendment for the DOC to dictate what I can and cannot write in my complaint. The only type of verbiage that may be restricted is true threats and abusive language. Washington case law already addressed this issue in the Parmelee case. The DOC has not asserted any "legitimate penological interest in censoring grievances so that defense is waived. Second, citing case law and RCW's is not using "legal language". If the OGP prohibits inmates from citing RCW's, why are grievance coordinators (GC's) all over the state process grievance that include RCW and case law citations. This is no "error". Rather it is evidence that grievances are selectively being obstructed by GC's arbitrarily relying on the "no legal language" rule when it suits them. The level three respondent has a constitutional duty to fix this problem because numerous grievances I have submitted have been illegally censored in this fashion. The OGP Manual and DOC practice must change. Also, I am asking for an order that every grievance I have filed that has been obstructed in this way be processed immediately.

**SUGGESTED REMEDY:**

| /S/ D. Dahne | 5/9/11 | /S/ Matthew Silva | 5/9/11 |
|---|---|---|---|
| Grievance Coordinator Signature<br>FIRMA DE COORDINADOR DE QUEJAS | Date<br>FECHA | Grievant Signature<br>FIRMA DE QUEJANTE | Date<br>FECHA |

**PART B – LEVEL III RESPONSE/PARTE B RESPUESTA 3ER NIVEL**

I reviewed your initial grievance as well as all appeals and responses.

DOC Grievance Program Manager Tamara Rowden also reviewed this grievance and provided this response:

The intent of the Offender Grievance Program is to be an internal grievance and appeal system that promotes proper and effective communication between staff and offenders in an effort to resolve issues at the lowest level. Staff and offenders are encouraged to resolve problems together as part of their routine interaction. The Grievance Program Manual is clear that while the Washington Administrative Code (WAC) may be referenced, citations of the Revised Code of Washington (RCW) provisions or case law are inappropriate. As you are aware, the request for rewriting is between the Grievance Coordinator and the grievant.

The information gathered during this investigation determines Mr. Dahne processed your complaint appropriately and in accordance with DOC Policy 550.100 as well as the Offender Grievance Program Manual. You are encouraged to review the manual in the Law Library for clarification on the program.

I concur with the previous responses.

OCO Deputy Secretary/Designee
SUBSECRETARIO DE LA OCO/DESIGNADO

7/6/11
Date
FECHA

Distribution:    Grievance Program Manager-Gerente del Programa de Quejas,  Grievance Coordinator-Coordinador de Queja,  Grievant-Quejante<br>Grievance Coordinator-Coordinador de Quejas,  Grievant-Quejante

DOC 05-169 E/S (Rev. 11/24/09)                                                                DOC 550.100

72

# Appendix 6



STATE OF WASHINGTON
## DEPARTMENT OF CORRECTIONS
**STAFFORD CREEK CORRECTIONS CENTER**
191 Constantine Way, MS WA-39 - Aberdeen, Washington 98520
(360) 537-1800
FAX: (360) 537-1807

November 8, 2010

TO:        Silva, Matthew DOC 957176
           H6 A3

FROM:     Clint May Correctional Captain

SUBJECT:   Offender Correspondence

I have received your correspondence dated 11-1-10 stating that the mailroom opened mail
from the Attorney Generals Office/ Public Disclosure Material and that it was legal mail
and should not have been opened. You did not include a mail rejection file number, but
due to you receiving two rejection on 9-29-10 mail rejection file 27052 and 27053 which
was mail from the Attorney Generals Office and was marked Public Disclosure
Materials, I will address these two.

The Attorney Generals Office marks all of their legal correspondance LEGAL MAIL
when it contains legal communications. Mail that is a response to public dislosure is
marked Public Disclosure Material. The mailroom is careful to process all mail that is
easily identified by the courts and or marked Legal Mail through the Legal Mail process.
The mailroom staff are following DOC 450.100 Mail For Offenders, V. Legal Mail,
 A. Offenders have the right to correspond by means of legal mail. Legal mail must meet
all of the following requirements:
1.Correspondence to or from courts and court staff, attorneys, the Indeterminate Sentence
Review Board (ISRB), established groups involved in the representation of offenders in
judicial proceedings (i.e., American Civil Liberties Union, Disability Rights Washington,
legal services groups, etc.), the President or Vice President of the United States, members
of the United States Congress, embassies and consulates, the United States Department of
Justice, state attorneys general, governors, members of the state legislature, law
enforcement officers in their official capacity, the Washington State Office of Financial
Management's Tort Claims Division, and the Prison Rape Elimination Act Unit at
Headquarters.
2.   Mail between offenders verified to be co-parties to the same legal proceeding that
contains personal legal documents/papers and/or a legal pleading and have been approved
for offender to offender correspondence.

74

3.Incoming mail must have the return address on the front of the envelope clearly indicating that it is from one of the above listed sources.

4.  The front of the envelope must be clearly marked "Legal Mail", "Attorney/ Client", "Confidential", or similar designating the item as legal mail. a. Mail readily identifiable as being from a court will be handled as legal mail regardless of whether it has been marked legal mail.

These files do  not fit the criteria of legal mail.

File 27052 is a public disclosure and contains a copy of legal paperwork belonging to Offender Hegge who is an offender at Stafford Creek.

File 27053 is a public disclosure containing a CD-R that contains copies of communications between Washington State offenders and the Attorney Generals Office and contains their legal communications.

I hope this clears up this manner and explains the difference between mail that contains a public disclosure and mail that is Legal Correspondance.

If you should have any more questions regarding this issue, I encourage you to talk with your counselor first, who will answer your questions, or direct you to the correct source for answers.


cc:    Mailroom Sergeant
       File

75

# Appendix 7

Matthew G. Silva
WDOC 957176
Stafford Creek Corrections Center
191 Constantine Way
Aberdeen, WA 98520

November 18, 2010

<u>Via U.S. Mail - Certified</u>
Assistant Secretary For Prisons
Washington State Department of Corrections
P.O. Box 41100
Olympia, WA 98504

Re: Appeal Of Mail Rejection Decision Dated 11/8/10
    SCCC Mail Restriction Notice No. 27052
    SCCC Mail Restriction Notice No. 27053

Dear Assistant Secretary For Prisons:

I received an 11/8/10 letter-decision signed by SCCC Correctional
Captain Clint May, regarding the above-entitled mail restriction
files.  By this letter, I appeal the decision on both of these
rejections for the following reasons.

First, incoming mail from the Attorney General's Office ("AGO") is
"legal mail" under WDOC Policy 450.100(V)(A)(1).  It is not the
content of the envelope that dictates "legal mail" under the
policy, nor may the SCCC intentionally open incoming mail from the
sources listed in Policy 450.100(V)(A)(1).  If you have any
evidence that the envelopes were not marked "legal mail", please
clear state that in your response.

Second, there is no legitimate penological interest in restricting
the contents of either of these mailings.  File 27052 does not
contain a copy of any "legal paperwork belonging to Offender
Hegge", contrary to Captain May's finding.  It contains papers
that were filed by a prisoner with a public agency, the AGO.
Papers that are filed with public agencies are not "confidential"
and they do not "belong" to the filing party; they "belong" to the
public agency.  Similarly, File 27053 is public record.  Notably,
no specific "legitimate penological interest" has been identified
as a basis for restricting the entire contents of either of these
mailings.

Pursuant to <u>Thornburgh v. Abbott</u>, 490 U.S. 401, 413-14 (1989),
prison officials cannot restrict incoming mail unless the
restriction is reasonably related to a legitimate penological
interest.  Neither the mail restriction notices nor Captain May's
11/8/10 decision cite any such "legitimate interest".  Therefore,
these restrictions are unconstitutional and the notice I have
received is deficient as a matter of due process.  One cannot be
expected to argue in favor of a position when no opposing position
has been specified.

77

Mail Restriction Appeals
No. 27052 and No. 27053
November 18, 2010
Page 2 of 2

By this letter, I demand immediate delivery of the contents of
File 27052 and File 27053.  If you decline to deliver it, any
"legitimate penological interest" underlying these restrictions
must be set forth in your written response.  I hereby reserve the
right to appeal any new "interest" claimed in your decision.
Failure to timely respond, or to designate each and every interest
upon which you rely, will be deemed abandonment of unspecified
defenses under the doctrines of notice, estoppel and waiver.  See
WDOC Policy 110.300.

Thank you for your time and consideration of this important
matter.

Sincerely,

Matthew Silva

c Pat Glebe, SCCC Superintendent
  Clint May, SCCC Captain
  file

78